S05A0268. HOWARD v. THE STATE.
S05A0269. DURHAM v. THE STATE.

(611 SE2d 3)

THOMPSON, Justice.

Appellants Michael DeAnthony Howard and Frederick Maurice Durham were jointly indicted, tried, and convicted for the murder of Darnele Smith, the kidnapping of Tomika Godwin and Calvin Fisher, as well as armed robbery, and burglary.[1] Because appellants raise similar issues on appeal, their cases have been consolidated. We affirm the judgments of conviction in both cases.

Believing that Smith was selling large quantities of marijuana from his Douglas County apartment, Durham and others devised a plan to rob the premises to obtain money and marijuana.[2] On the way there, they picked up Howard, who went along with the scheme. Howard and Durham entered Smith's apartment, brandishing pistols and yelling, "Where's the money, where's the weed?" The other accomplices remained in their car. At gunpoint, Howard and Durham forced Smith's roommate Fisher, and Godwin, a guest in the apartment, to lie on the floor face down. Howard searched the apartment and went into Smith's bedroom, warning him, "Don't do anything

[1] The crimes occurred on June 17, 1995. An indictment was returned on July 24, 1995, charging both defendants with felony murder predicated on armed robbery, malice murder, armed robbery, burglary, and two counts of kidnapping. Trial commenced on September 23, 1996. On October 4, 1996, a jury acquitted Howard of felony murder and convicted him of all remaining counts; Durham was acquitted of malice murder and convicted of the remaining counts. The trial court sentenced Howard to life imprisonment for malice murder, plus consecutive and concurrent terms for the remaining offenses. Durham was sentenced to life imprisonment, the armed robbery conviction was merged into the felony murder, and he was sentenced to consecutive and concurrent terms for the remaining offenses. Timely motions for new trial were filed by both defendants, and were denied on August 17, 2004. Howard's notice of appeal was filed on September 14, 2004, and Durham's on the following day. Both cases were docketed in this Court on October 8, 2004. Oral argument was heard in Howard's case on February 21, 2005; and Durham's appeal was submitted for a decision on briefs on November 29, 2004.

[2] Clyde Drennen, Dewayne Mills, and Jeffrey Clifton were also indicted for the crimes. The three pled guilty to lesser offenses; Drennen and Mills testified at trial, implicating both Durham and Howard.

stupid." A gunshot rang out from Smith's room, and Howard walked back into the living room, demanding money and marijuana of the other occupants.

Both perpetrators then forced Fisher into Smith's room where Smith lay fatally injured on the bed. Again they demanded to know where they could find the money and marijuana, and Fisher pointed to a safe in the bedroom closet. The perpetrators left the apartment a few minutes later, carrying the safe with them.

At about the same time, a neighbor, Sara Bryan, observed a white Mustang convertible with four male occupants park near Smith's apartment. She saw two of the men leave the vehicle and return several minutes later, carrying a large container which they attempted to place in the trunk. Bryan heard one of them proclaim that he "shot the motherfucker." Smith died as the result of a bullet wound from a .38 caliber handgun.

Later that day, Howard, Durham, and their accomplices drove the white Mustang to the home of a friend. They took Smith's safe into the house, broke it open, and divided its contents of marijuana and jewelry. Howard told the friend that he had taken the safe during the robbery of a home in Douglasville, in the course of which he shot a man in a bedroom.

The next day, police stopped a Mustang which matched the description that Bryan had provided. The car was occupied by the defendants' accomplices. Smith's jewelry and personal documents were found in the car, along with marijuana. Multiple fingerprints belonging to Howard and Durham were recovered from the vehicle, and the two were arrested for the crimes.

After receiving *Miranda* warnings, Durham gave conflicting custodial statements, finally admitting that he went to Smith's apartment for the purpose of robbing him, but denying that he was the shooter. Howard invoked his *Miranda* rights and refused to make a statement.

At trial, victim Godwin, as well as multiple accomplices, identified Durham and Howard as the intruders. Durham testified that he entered Smith's apartment armed with the murder weapon, that Howard entered after him, that he (Durham) held Fisher and Godwin at gunpoint, and that Smith was shot in a back bedroom.

1. Appellants submit that their convictions were insufficient as a matter of law because they were based solely on the uncorroborated testimony of accomplices.

> OCGA § 24-4-8 provides that in felony cases the testimony of an accomplice is insufficient unless corroborated. . . . Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient

corroboration of the accomplice to support a verdict. [Cit.]

*Wisenbaker v. State*, 259 Ga. 416, 417 (383 SE2d 132) (1989). In the present case, victim Godwin testified that Howard and Durham were the two men she observed when they entered Smith's apartment. Her in-court identification was subjected to thorough cross-examination by counsel for both defendants, and the issue of her credibility was properly resolved by the finder of fact. See *Kelley v. State*, 248 Ga. 133 (2) (281 SE2d 589) (1981). In addition there was substantial forensic evidence linking defendants to the crimes, as well as Durham's admitted participation. Accordingly, the evidence was sufficient to authorize a rational trier of fact to find Howard and Durham guilty beyond a reasonable doubt of the crimes for which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Freeman v. State*, 268 Ga. 181 (5) (486 SE2d 161) (1997).

2. Defendants assert that the trial court erred in allowing the in-court identification by victim Godwin.

On cross-examination, Godwin was asked whether she was able to remember anything better today than she was able to remember at the time of the crime. She replied that her observation of defendants in court improved her memory as to their physical characteristics at the time of the shooting. She was also asked on cross-examination whether she could see their faces on the day in question; she replied that she observed them when they first entered Smith's apartment. On redirect, Godwin testified without "doubt" that the two defendants were the men who committed the crimes in Smith's apartment. No objection was made at that time. Counsel for both defendants each conducted recross-examination. After the witness was excused, defense counsel objected to Godwin's in-court identification of defendants and moved that it be stricken. In the absence of a contemporaneous objection, defendants have waived the opportunity to raise this issue on appeal. *Aiken v. State*, 226 Ga. 840 (3) (178 SE2d 202) (1970); *Luke v. State*, 126 Ga. App. 111 (1) (190 SE2d 85) (1972). See generally *Culler v. State*, 277 Ga. 717 (6) (594 SE2d 631) (2004).

3. It is asserted that the trial court erred in denying motions by both defendants to quash or dismiss the indictment due to alleged misconduct by the State.

At a pretrial motions hearing it was established that while defendants were all housed in pretrial detention in the Douglas County Jail, co-indictee Clifton communicated to his attorney that he was being threatened and intimidated by other defendants in the case. For his protection, Clifton was briefly placed in isolation but then was returned to the general population. Thereafter, Clifton complained to the jail staff and to lead investigator Detective Wynn, that

the other defendants were continuing to threaten him and demanding that he sign false affidavits exonerating them in the crimes. Defendants also warned Clifton not to disclose their demands to his counsel. In response to that information, and as a precautionary measure to ensure the safety of the jail, Detective Wynn, along with jail personnel, conducted a warrantless search of the cells of the defendants looking for the materials that Clifton had described. They confiscated some documents which corroborated Clifton's claim. Detective Wynn testified at the motions hearing that he deliberately avoided taking any documents relating to attorney-client communications; he was interested only in "coercion or threats that may be going on between [the defendants] and Clifton."

The next morning Detective Wynn took the documents to the prosecuting attorney, who did not review them, but advised Wynn to deliver them to the trial court for review. The trial court reviewed the documents and conducted an evidentiary hearing, after which it found that no privileged information had been seized. Although defendants make the unspecified claim that the confiscated documents include attorney-client privileged material, the trial court observed that the materials consisted of three affidavits (one signed before a notary public, and two in blank) along with some legal research.[3] Finding no harm to the defendants, the trial court denied the motion to quash, and returned the documents to the defendants.

(a) The thrust of defendants' argument is that the State's agents intentionally deprived them of a fair trial by undermining the attorney-client relationship. To that extent, the claim is couched on Sixth Amendment grounds. In support of this argument, Durham posits that the State's actions caused him to lose confidence in his attorney, caused him to testify against the strong advice of counsel, and required his counsel to offer the testimony of co-defendant Mills, which was detrimental to his defense. Howard, similarly, makes a general claim that his confidence in his attorney has been eroded by the State's conduct, but offers no concrete support.

It is well-settled in Georgia that " 'communications made [by a client] to an attorney for the purpose of being conveyed by him to others' " do not fall within the protections of the attorney-client privilege. *Fowler v. Sheridan*, 157 Ga. 271 (121 SE 308) (1924). See

---

[3] It is also alleged that Detective Wynn improperly confiscated a second stack of documents from defendant Howard, which interfered with the attorney-client relationship. The evidence showed that at the conclusion of a pretrial hearing, Howard's counsel handed him a stack of documents which consisted of the State's responses to the defendants' request for discovery. Detective Wynn briefly confiscated those documents to ensure that they contained no contraband, and the documents were returned to Howard soon after his return to the jail. Howard's counsel stipulated that no attorney-client material was contained in those documents.

also *Riley v. State*, 180 Ga. 869, 870 (2) (181 SE 154) (1935); *Richards v. Smith*, 173 Ga. 424 (1) (160 SE 608) (1931).

In a case with similar facts, the Court of Appeals concluded that the attorney-client privilege did not apply to a document prepared by a defendant and signed by the victim prior to trial that purported to explain the crime. *Osborn v. State*, 233 Ga. App. 257 (2) (b) (504 SE2d 74) (1998). Similarly, the affidavits in question in this case were prepared by the defendants and were disseminated to others; thus, they were not subject to the attorney-client privilege. The fact that these documents are not afforded privileged status negates any claim that their disclosure violated defendants' right to counsel under the Sixth Amendment.

Further, even if the documents were subject to the attorney-client privilege, we would find no violation of defendants' Sixth Amendment rights. We agree with the reasoning in *Shillinger v. Haworth*, 70 F3d 1132 (10th Cir. 1995), when that court addressed the issue of "the appropriate Sixth Amendment standards governing an intrusion by the prosecution into the defendant's communications with his attorney." The *Shillinger* court held that "when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and *lacks a legitimate justification for doing so*, a prejudicial effect on the reliability of the trial process must be presumed." (Emphasis supplied.) Id. at 1142. In the present case, the State established a legitimate purpose for conducting a search for the affidavits, and after an in-camera inspection, the trial court determined that no confidential communications were implicated. It was also shown that the prosecutor was shielded from access to any information obtained by the search, and there is no allegation that the documents were used to the detriment of the defendants at trial. Under the circumstances, we hold the State had a legitimate justification for searching defendants' cells and that no interference with the Sixth Amendment right to counsel occurred.

(b) To the extent that defendants assert that the searches violated their Fourth Amendment protections, *Thomas v. State*, 263 Ga. 85 (3) (428 SE2d 564) (1993) is controlling. The application of the Fourth Amendment depends on whether there is a legitimate expectation of privacy in the object seized, and "[a]ny expectation of privacy a pretrial detainee may have in [his] cell is necessarily diminished." Id. at 87. In *Thomas*, we upheld the validity of the seizure of letters from a detainee's cell, noting that "[f]or security and maintenance purposes, jail officials must have access to the cells and personal effects of all prisoners (including pretrial detainees)." Id.

As the uncontroverted evidence shows, the searches of defendants' cells were initiated by the investigator and prison personnel

for the legitimate objectives of managing the facility to ensure its security and that of its detainees. Under the circumstances, the items seized as a result of these searches are not within the scope of Fourth Amendment protections. *Thomas*, supra at 87. See also *State v. Henderson*, 271 Ga. 264 (3) (517 SE2d 61) (1999).

4. Durham submits that the trial court erred in failing to grant a motion to sever his trial from that of co-defendant Howard.[4] As the moving party, Durham has the "burden of making a clear showing of prejudice and a denial of due process in the absence of severance." (Punctuation omitted.) *Moss v. State*, 275 Ga. 96, 97 (2) (561 SE2d 382) (2002).

The following factors must be considered by a trial court when exercising its discretion in regard to a motion to sever in a case in which the death penalty is not sought. "(1) Will the number of defendants create confusion as to the law and evidence applicable to each? (2) Is there a danger that evidence admissible against one defendant will be considered against the other despite the court's instructions? (3) Are the defenses of the defendants antagonistic to each other or to each other's rights?" *Kelley v. State*, supra at 135 (3).

Here, there was no danger of confusion because only two defendants were on trial and the same evidence was applicable to each. There was no evidence admissible against Howard which was inadmissible against Durham. In fact, Durham gave a custodial statement implicating himself in the crimes, and any reference to Howard in that statement was redacted so as to avoid a potential *Bruton*[5] problem. As noted previously, Howard neither gave a custodial statement, nor did he testify at trial. Instead, he asserted an alibi defense at trial.[6] Durham testified at trial that although he was at Smith's apartment when the crimes were committed, he did not intend to commit an armed robbery or shoot the victim. Even assuming arguendo that the two defenses were antagonistic,

> the mere fact that codefendants' defenses are antagonistic is not sufficient in itself to warrant the grant of a separate trial absent a showing of harm. [Cit.] The burden is on the defendant requesting the severance to do more than raise

---

[4] Howard does not join this enumeration of error.

[5] In *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), the Court held that a defendant's Sixth Amendment right of confrontation is violated when: (a) co-defendants are tried jointly; (b) one co-defendant's statement is used to implicate the other co-defendant in the crime; and (c) the co-defendant who made the implicating statement employs his Fifth Amendment right not to testify and thus does not take the stand to face cross-examination about the statement.

[6] Of course, the jury is the judge of credibility of witnesses and was authorized to disbelieve the proffered alibi defense. See *Roberts v. State*, 267 Ga. 669 (1) (482 SE2d 245) (1997).

the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process.

(Punctuation omitted.) *Moss v. State*, supra at 99 (2). We are unable to perceive how the assertion of an alibi defense by Howard was harmful to Durham who admitted his participation in the crimes. It follows that Durham did not make a clear showing that he was prejudiced by an antagonistic defense of his co-defendant which amounted to a denial of due process. Accordingly, the trial court did not abuse its discretion in denying Durham's motion to sever.

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 28, 2005.

*James M. Allison, Jr.*, for appellant (case no. S05A0268).
*Frank C. Winn*, for appellant (case no. S05A0269).
*J. David McDade, District Attorney, Christopher R. Johnson, Assistant District Attorney, Thurbert E. Baker, Attorney General, Frank M. Gaither, Jr., Assistant Attorney General*, for appellee.