## S05A1305. YOUNG v. THE STATE.
### (623 SE2d 491)

HINES, Justice.

Timothy William Young appeals his convictions for malice murder, burglary, robbery, aggravated assault, and concealing the death of another, all in connection with the death of David Montgomery. For the reasons that follow, we affirm in part and vacate in part.[1]

Construed to support the verdicts, the evidence showed that Montgomery was a seasonal worker who slept in the office of a swimming pool construction and cleaning service; Young also worked there. Shortly before dawn, Young entered the office and attempted to take Montgomery's wallet from the end table next to the futon on which Montgomery was sleeping. Montgomery awoke and struggled with Young. Young hit him several times on the head and body with a pair of pliers that Young had taken inside with him; he also choked Montgomery with his hands and arms, and with the pliers, until Montgomery was dead. Young took Montgomery's credit card and driver's license from the wallet.

---

[1] Montgomery was killed on March 3, 2003. On May 14, 2003, a Chatham County grand jury indicted Young for malice murder, felony murder while in the commission of robbery, felony murder while in the commission of burglary, felony murder while in the commission of aggravated assault, robbery, burglary, aggravated assault, and concealing the death of another. Young was tried before a jury on April 27-28, 2004, and found guilty of malice murder, robbery, burglary, aggravated assault, and concealing the death of another; he was found not guilty of all of the felony murder charges. On April 28, 2004, Young was sentenced to life in prison for malice murder, and separate concurrent terms of 20 years in prison for robbery, burglary, aggravated assault, and concealing the death of another. Young moved for a new trial on May 19, 2004, and amended his motion on October 22, 2004. The motion was denied on January 7, 2005. Young filed his notice of appeal on January 26, 2005. The appeal was docketed in this Court on April 29, 2005, and submitted for decision on June 20, 2005.

Young placed Montgomery's body in the bed of Montgomery's pickup truck, drove to a location where a pickup truck camper shell was stored, put the body under the shell, and returned to the office. He left Montgomery's truck there and drove away in his own vehicle; he left the pliers at the crime scene. Young telephoned a co-worker and requested that the co-worker say that he and Young had worked on a piece of equipment at the office, should investigators ask about a pair of pliers. Young also told the co-worker that: he was using drugs; he went to the office to leave a note; he reached for Montgomery's wallet; Montgomery attacked him with a pair of pliers; and he choked Montgomery to death, panicked, and disposed of Montgomery's body.

Young was apprehended three days later; he had broken into a home his father owned in McIntosh County, and was hiding nearby. His vehicle was parked in the vicinity; in it was Montgomery's driver's license and credit card. Young told the police that he knew that Montgomery was staying in the office, and he went there intending to take Montgomery's wallet while he slept. Although Young had been issued a key to the office, there was evidence that the door to it had been pried open, and in any event, he did not have authority to be in the office at the time the crimes were committed.

1. Young contends that the verdicts were against the weight of the evidence. This Court does not re-weigh evidence or resolve conflicts in it; evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence. *Cimildoro v. State*, 259 Ga. 788 (387 SE2d 335) (1990). The proper standard of appellate review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The evidence was sufficient to enable a rational trier of fact to find Young guilty beyond a reasonable doubt of the crimes of which he was convicted. Id.

2. The trial court sentenced Young for both malice murder and aggravated assault. Although there is no merger of the two crimes as a matter of law, aggravated assault may merge into malice murder as a matter of fact. See *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). Young argues that, in this case, there was such a factual merger, and review of the record shows that the evidence used to prove that he committed aggravated assault is the same as that used to prove he committed malice murder. Although the State argues that there was an aggravated assault completed by striking Montgomery with the pliers, and then a malice murder committed by choking him, the evidence was that Montgomery's death was caused by a combination of blunt force trauma and strangulation; the medical expert testified that it would be "artificial" to separate those

injuries as a cause of death. As the aggravated assault merged into the malice murder as a matter of fact, the separate judgment of conviction and sentence for aggravated assault must be vacated. See *Fitzpatrick v. State*, 268 Ga. 423, 424 (1) (489 SE2d 840) (1997).

3. Young contends that his videotaped statement to police was not voluntarily given. There was testimony during a *Jackson-Denno*[2] hearing that he was advised of his *Miranda*[3] rights before giving the statement, was coherent, and did not appear to be under the influence of alcohol or drugs.[4] Nonetheless, Young argues that, while hiding in McIntosh County, he prepared a suicide note, of which the interviewers knew, and thus the voluntariness of his statement was not shown. However, he does not present any evidence of mental incapacity other than the existence of the draft note. A trial court's factual and credibility findings as to the voluntariness of a custodial statement are to be accepted unless clearly erroneous, *McDade v. State*, 270 Ga. 654, 656 (3) (513 SE2d 733) (1999), and there is evidence supporting the court's determination that the statement was voluntarily given.

4. When Young was in custody, the police searched his vehicle after he gave written consent. Young complains that the police should not have accepted his consent because they knew of his draft suicide note, and therefore knew that he was not competent to consent. However, in addition to the lack of evidence of his incapacity, see Division 3, supra, Young did not object to the admission into evidence of the signed consent form, and thus, he has not preserved this issue for appellate review. See *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999).

5. The pliers identified as the murder weapon were introduced into evidence. Young objected because the bag in which they were kept was not sealed when the officer who had collected the evidence identified them on the witness stand. The trial court properly overruled the "chain of custody" objection; the pliers are a distinct physical object easily identifiable by observation, not a fungible item, and proof of the "chain of custody" prior to their admission into evidence was unnecessary. *Bishop v. State*, 271 Ga. 291, 294 (7) (519 SE2d 206) (1999).

6. At the time of the commission of the crimes, Young was married; he was divorced at the time of trial. Young's former wife testified for the State regarding things Young told her during their

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[4] In his videotaped statement, he responded affirmatively when asked if he had been read and understood "your rights."

marriage. Although Young contends this violated the spousal privilege rule of OCGA § 24-9-23, again, he failed to object to this testimony and has not preserved this issue for appellate review. *Mullins*, supra. In any event, even assuming that Young had standing to make an objection concerning the witness's failure to assert the privilege of OCGA § 24-9-23, the privilege did not exist. "[T]he spousal privilege against compellability 'ceases when the marriage is terminated by death or divorce.' [Cits.]" *Chadwick v. State*, 176 Ga. App. 296, 298 (2) (335 SE2d 674) (1985).

7. Substantial evidence showed that Young was using crack cocaine before the crimes, and that he planned to take Montgomery's wallet to purchase more. Proof of motive is not inadmissible simply because it incidentally puts a defendant's character into evidence. *Adams v. State*, 272 Ga. 115, 117 (3), (4) (527 SE2d 200) (2000).

8. At one point in the trial, the court announced that it and counsel for both parties had reviewed certain photographs that would be shown to the jury, and placed on the record the fact that they were admitted over Young's objection; the basis for the objection was not put on the record. Young did not object to the failure to place the basis for the objection on the record, and has not attempted to have the record completed under OCGA § 5-6-41 (f), thus, any error is waived. *Mullins*, supra; *Forehand v. State*, 267 Ga. 254, 255 (2) (477 SE2d 560) (1996).

9. Before trial, the court instructed the jury to avoid media coverage about the case; the court repeated this admonition after the first day of trial. Following the jury charge conference, Young requested that the court poll the jury to determine if any jurors had read a newspaper article about the case that had been published during the course of the trial. The court refused to do so. It is presumed that jurors follow a trial court's instructions. *Smith v. State*, 267 Ga. 372, 374 (3) (477 SE2d 827) (1996). Young has made no showing that any juror failed to follow the court's instructions, and it was not error for the court to deny the request to conduct a poll, nor to give further instructions regarding media coverage.

10. Young contends that the trial court should have instructed the jury on the crime of theft by taking as a lesser included offense of robbery. The record contains no written request for a charge on the law of theft by taking. " 'Absent a written request for a charge on a lesser included offense, made at or before the close of the evidence, the failure to so charge is not error. (Cit.)' [Cit.]" *Brown v. State*, 269 Ga. 67, 69 (2) (495 SE2d 289) (1998).

11. Finally, Young argues that he did not receive effective representation by trial counsel, because counsel: did not substantially investigate his case; never asked him about the facts of his arrest; failed to give him copies of the evidence counsel received from the

State until three days before trial; did not discuss this material with him; did not file a pre-trial motion to have him mentally evaluated; did not move to suppress the videotape of his statement until the day of trial; did not introduce photographs showing injuries he sustained in the struggle with Montgomery; and did not object to the testimony of his former wife. In order to prevail on his claim of ineffective assistance of counsel, Young must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of this test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong, Young must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Despite the above cited precedent, Young contends that he need not show how the alleged deficiencies specifically prejudiced his trial because

> the presentation of a fractured defense, and the placement of the [defendant] on the stand with no preparation whatsoever in a trial in which his life hung in the balance is evidence of ineffectiveness "so pervasive that a particularized inquiry into prejudice would be 'unguided speculation.' [Cit.]"

*Ross v. Kemp*, 260 Ga. 312, 315 (393 SE2d 244) (1990). But Young's reliance on this principle is misplaced; "[t]he circumstances under which a court will presume prejudice are extremely limited." *Owens v. State*, 269 Ga. 887, 888 (2) (a) (506 SE2d 860) (1998). And such circumstances are not present; this is not a case in which "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Turpin v. Curtis*, 278 Ga. 698, 699 (1) (606 SE2d 244) (2004). On the contrary, counsel presented a coherent theory of

voluntary manslaughter and mutual combat, and testified to extensive preparation for trial, including several meetings with Young totaling over 13 hours, as well as other meetings with Young's family.[5]

As Young has not shown prejudice from any alleged error on counsel's part, the trial court did not err in denying the motion for new trial on the ground of ineffective assistance of counsel.

*Judgments affirmed in part and vacated in part. All the Justices concur, except Hunstein, P. J., who concurs in the judgment and in all Divisions except Division 6.*

DECIDED DECEMBER 1, 2005.

*Orin L. Alexis*, for appellant.

*Spencer Lawton, Jr., District Attorney, Margaret E. Heap, Assistant District Attorney, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.

---

[5] At the hearing on the motion for new trial, Young's response to the question of what he hoped might have been revealed by further investigation of the case was simply "[j]ust any help I could get on it."