S06A1252. DENNY v. THE STATE.
(636 SE2d 500)

HINES, Justice.

Ricky Lee Denny ("Denny") appeals his convictions for two counts of malice murder, one count of burglary, and one count of possession of a firearm or knife during the commission of a crime in connection with the fatal shootings of Joe Rainwater and his son, George Rainwater. Denny challenges the denial of severance; the denial of a pretrial request for a change of venue; the denial of requested additional peremptory challenges; the denials of mid-trial motions for a change of venue and mistrial; the admission of certain evidence; instances of alleged prosecutorial misconduct; instructing the jury on conspiracy; and the sufficiency of the evidence. For the reasons which follow, the challenges are without merit, and we affirm.[1]

---

[1] The crimes occurred on January 24, 1990. On January 24, 2002, a Coweta County grand jury indicted appellant Ricky Lee Denny, along with his brother, Michael Denny, for the malice murder of Joe Rainwater, the malice murder of George Rainwater, the felony murder of Joe Rainwater while in the commission of burglary, the felony murder of George Rainwater while in the commission of burglary, burglary, and possession of a firearm or knife during the commission of a crime. Appellant was tried with Michael Denny before a jury, and on February 13, 2004, was found guilty of all charges. On that day, he was sentenced to consecutive terms of life in prison for the malice murders, a concurrent twenty years in prison for the burglary, and a consecutive five years in prison for the possession offense; the felony murders stood vacated as a matter of law. A motion for new trial was filed on March 12, 2004, and the motion was denied on May 19, 2005. A notice of appeal was filed on September 13, 2005, and this Court dismissed the appeal as untimely on February 13, 2006. Appellant filed a motion for an out-of-time appeal on February 28, 2006, and the motion was granted on March 2, 2006. A notice of appeal was filed

Joe Rainwater and his son George were shot and killed on January 24, 1990, at the home of Joe's other son, Kevin. Kevin's neighbor, Evelyn Hall, spied a suspicious white van at the house and called Joe's sister and George's aunt, Ann Houston, who lived across the street from Kevin. Houston and her daughter saw the van and a man who resembled Denny. Houston telephoned Joe's wife, who presumably then contacted Joe and George. The two men drove separately to Kevin's house and arrived while the van was still there. Denny, his brother Michael Denny ("Michael"), and Russell Brown, who committed burglaries together, had broken into Kevin Rainwater's home. They had driven around Coweta County in search of a home to burglarize and selected Kevin Rainwater's home because it looked empty, and sat far back off the road. When Joe and George arrived, Denny took a pistol from Brown and forced the Rainwaters inside and onto the floor. Denny then gave the pistol to Michael and ordered him to shoot the men, which he did. George's pregnant wife and five-year-old daughter found the bodies later in the day. The men had been shot in the head, execution style, by a .380 semi-automatic pistol. The house had been ransacked. A distinctive AR-15 rifle had been stolen along with a .22 pistol, a shotgun, a bottle of liquor, and other items. Evidence collected at the scene included .380 shell casings and a cigarette butt.

The crimes went unsolved, but the investigation continued. In 1998, an investigator was able to trace the stolen AR-15 rifle. The investigator also resubmitted the cigarette butt to the State Crime Lab for testing. In October 1998, the lab was able to extract and analyze DNA from saliva on the cigarette. The resultant DNA information was periodically run through a GBI database of known samples until December 2001, when a match with the DNA of Michael occurred. Investigators obtained a search warrant for a blood sample from Michael; analysis of that sample confirmed the match.

Further investigation revealed that Michael had been arrested for burglary in neighboring Spalding County seven days after the Rainwater murders. Also arrested were Denny, another relative, and Russell Brown. They were arrested in Denny's white van.

1. Denny contends that the trial court erroneously denied his motion to sever his trial from that of his brother Michael. But the contention is unavailing.

A defendant who seeks a severance must show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, this Court will not disturb the trial court's denial of a

on March 22, 2006, and the case was docketed in this Court on March 31, 2006. The appeal was submitted for decision on May 22, 2006.

severance motion. *Rhodes v. State*, 279 Ga. 587, 589 (3) (619 SE2d 659) (2005). The trial court is to consider whether a joint trial will create confusion of the evidence and law, whether there is a danger that evidence implicating only one defendant will be considered against a co-defendant despite limiting instructions, and whether the defendants are asserting antagonistic defenses. Id.

Denny argues that the joint trial confused the jury regarding the co-defendants' respective acts and created an atmosphere of "guilt by association," in that Michael was connected to the crime scene by physical evidence and had a longer criminal history which was admitted into evidence, and that the joint trial also prevented Denny from calling Michael as an exculpatory witness or commenting on Michael's refusal to testify. But, the number of defendants was not so large as to create confusion regarding the evidence and the law to be applied to each defendant. *Howard v. State*, 279 Ga. 166, 171 (4) (611 SE2d 3) (2005). As to other criminal acts and any "guilt by association," the trial court instructed the jury about the limited purposes of such evidence and also that it was not authorized to find a person guilty of a crime who was "merely associated" with other involved persons. Id. Nor can it be said that the brothers' defenses were antagonistic to each other because both denied being at the crime scene. Id. Finally, Denny has made no showing on appeal that Michael could or would have provided exculpatory evidence. Simply, Denny has failed to make a clear showing of prejudice and a denial of due process in the absence of severance. *Adkins v. State*, 279 Ga. 424, 426 (3) (614 SE2d 67) (2005).

2. Denny contends that the trial court erroneously denied his pretrial motion for a change of venue because widespread and detailed pretrial publicity about his criminal history and the crimes for which he was to be tried jeopardized his right to a fair and impartial jury in Coweta County. However, in moving for a change of venue, a petitioner must show that the trial setting was inherently prejudicial or that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. *Maddox v. State*, 278 Ga. 823, 825 (2) (607 SE2d 587) (2005). This Denny failed to do. There was no showing that the pretrial publicity was inherently prejudicial to Denny or that there was actual prejudice in the selection of the jury. The record reveals that many of the prospective jurors were unaware of the publicity surrounding the crimes, in large measure because of the 14-year time gap between the crimes and the trial, and that no remaining venirepersons expressed a fixed opinion regarding Denny's guilt based upon exposure to media coverage. *Roundtree v. State*, 270 Ga. 504, 505 (2) (511 SE2d 190) (1999).

3. There is likewise no merit to Denny's contention that the trial court erroneously denied his motion for additional peremptory challenges. Former OCGA § 17-8-4[2] in effect at the time of trial made the decision of whether to grant additional strikes to defendants to be within the sole discretion of the trial court, and the exercise of such discretion will be disturbed only where an abuse of discretion can be demonstrated. *Adams v. State*, 264 Ga. 71, 74 (5) (440 SE2d 639) (1994). Denny asserts that he and his co-defendant might have struck prospective jurors for different reasons, but he has not alleged any harm arising from the selection of the jury. There was no abuse of discretion in the trial court's denial of additional jury strikes. Id.

4. Denny contends that the trial court erroneously denied his oral motion for a change of venue and for a mistrial made during trial. The basis of the motion was that on the first day of trial, a local newspaper published an article which detailed the defendants' criminal pasts, and Denny's attorney saw at least one juror eating lunch near a stand where editions of the newspaper were being sold. But, the contention of error is without merit. The trial court instructed the jurors not to read any news accounts of the case, and it is presumed that jurors follow trial courts' instructions. *Young v. State*, 280 Ga. 65, 68 (9) (623 SE2d 491) (2005). Denny has made no showing that any juror failed to follow the court's instructions. Therefore, it was not error for the trial court to not conduct further inquiry and to deny the request for a change of venue and a mistrial. Id. See also *Todd v. State*, 243 Ga. 539, 545 (8) (255 SE2d 5) (1979).

5. There is no merit to Denny's contention that the trial court erred in admitting evidence of two independent crimes, or as he characterizes it, "bad character" evidence. For the reasons set forth in this Court's decision in Michael's appeal, the independent crimes were properly admitted at the joint trial under the standards in *Williams v. State*, 261 Ga. 640, 642-643 (2) (409 SE2d 649) (1991). *Denny v. State*, 280 Ga. 81, 83 (2) (623 SE2d 483) (2005). As to Denny's complaint that the second similar transaction involved Michael but not him, the evidence of that crime showed that Michael committed it with an accomplice, which was in keeping with the pattern of the brothers' joint commission of crimes. *Denny v. State* at 83 (2).

6. Citing OCGA § 17-8-75, Denny next asserts that the trial court erred in failing to rebuke the prosecutor and declare a mistrial after it allowed the prosecutor to commit misconduct by, in violation of the

---

[2] Former OCGA § 17-8-4 provided in pertinent part:
In the event two or more defendants are tried jointly, the court, upon request of the defendants, acting in its sole discretion, may allow an equal number of additional strikes to the defendants, not to exceed five each, as the court shall deem necessary, to the ends that justice may prevail.

trial court's ruling, eliciting testimony from a State's witness about whether there were any outstanding criminal warrants against Denny at the time the witness arrested Denny for driving under the influence and burglary.

First, the record fails to disclose any contemporaneous objection on the basis now urged.[3] See *Hudson v. State*, 250 Ga. 479, 484 (4) (299 SE2d 531) (1983); *Johnson v. State*, 198 Ga. App. 316 (7) (401 SE2d 331) (1991). But, regardless, the cited exchange does not demonstrate the claimed prosecutorial misconduct. On the contrary, it shows the State's careful questioning of the witness in order to avoid disclosing whether there were such warrants.[4]

7. Denny further contends that the trial court erred in allowing the State to engage in "unduly emotional, unfairly inflammatory" closing argument, which included misstatements of the evidence, causing prejudice to him. However, the record reveals that Denny failed to object to all but one of the cited alleged improprieties, and therefore, has waived his right to rely on the unobjected-to statements as a basis for reversal. *Moore v. State*, 280 Ga. 766, 767 (2) (632 SE2d 632) (2006). As to Denny's sole contemporaneous objection that the prosecutor was guilty of mischaracterization by implying that the defense was suggesting that there was a State conspiracy to lie about the DNA evidence, there is simply no evidence of prosecutorial misconduct by a deliberate attempt to mislead the jury.

8. It was not error for the trial court to charge the jury on the law of conspiracy inasmuch as there was evidence of a conspiracy to burglarize Kevin Rainwater's home. *Denny v. State* at 83 (3).

9. Lastly, there is no merit to Denny's challenge to the sufficiency of the evidence. The evidence was sufficient to enable a rational trier of fact to find Denny guilty beyond a reasonable doubt of the crimes

---

[3] The record discloses only that a bench conference was held.

[4] The cited exchange was the following:
STATE: And had you called in prior to this time and checked to see if there were any warrants?
WITNESS: Yes, sir. When they all produced their identification, I had [Denny] step to the back of the van. I had gone back to the truck, to the radio, and I had called Spalding County and asked them to run a check on all four occupants of the vehicle. . . .
STATE: [W]ithout saying what the response was, did you get a response to your request over the radio?
WITNESS: Yes, I did.
STATE: Was [Denny] able to hear that response?
WITNESS: Yes, he was.
STATE: Again without saying what that response was, what, if any, reaction did [Denny] have to that?
WITNESS: He became very irate. It startled me that he started acting that way . . . .

for which he was tried and convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
   *Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 16, 2006.

*Stemberger, Cummins & Arnall, D. Scott Cummins*, for appellant.
   *Peter J. Skandalakis, District Attorney, Raymond C. Mayer, Assistant District Attorney, Thurbert E. Baker, Attorney General, Chad E. Jacobs, Assistant Attorney General*, for appellee.