## S08A0779. JACKSON v. THE STATE.

(668 SE2d 700)

HINES, Justice.

Kenny Lashawn Jackson appeals his convictions for felony murder, armed robbery, and burglary, all in connection with the death of Tamarcus Jordan. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Jackson, together with Cesar Sessions and Tellis Clark, formed a

---

[1] Jordan was killed on January 6, 2003. On February 12, 2003, a Houston County grand jury indicted Jackson together with Tellis Lamar Clark, Cesar Geronimo Sessions, and Cassandra Jackson for felony murder while in the commission of armed robbery, felony murder while in the commission of burglary, armed robbery, and burglary; Clark and Sessions were also indicted for possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon; and Clark was also indicted for aggravated assault. Jackson and Clark were jointly tried before a jury September 29-October 2, 2003, and each was found guilty of all charges for which he was indicted. On October 9, 2003, Jackson was sentenced to life in prison for felony murder while in the commission of armed robbery and a concurrent term of twenty years in prison for burglary, without the possibility of parole, see OCGA § 17-10-7 (c); the conviction for felony murder while in the commission of burglary stood vacated by operation of law, and the armed robbery conviction merged with the conviction for felony murder while in the commission of armed robbery. See *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). Jackson moved for a new trial on October 21, 2003, and amended the motion on July 15, 2004; the motion was denied on April 4, 2007. On May 1, 2007, Jackson filed a notice of appeal; his appeal was docketed in this Court on January 17, 2008, and submitted for decision on briefs.

plan to rob Jordan, a dealer of illegal drugs. The three men went to Jordan's home with Cassandra Jackson ("Cassandra") in two cars; Jackson drove one of the cars. Sessions and Clark exited the cars and approached the house; Jackson and Cassandra drove the cars away. Sessions was admitted into the house on the ruse of purchasing cocaine, and Clark followed him through the door, wielding a pistol; Sessions also produced a pistol, which he had obtained from Jackson. Clark began to search the house while Sessions took money from Jordan. Clark returned from another room holding a pistol to the head of Phyllis Griffin; Jordan rose from his seat, a struggle ensued, and Sessions fatally shot Jordan in the back and head. Sessions and Clark exited the house, and Sessions entered the car driven by Jackson, which had returned; Sessions told him the robbery attempt "went bad," and Jackson replied that he knew that to be the case because he heard the gunshots. Jackson drove Sessions to Clark's residence where they met Clark and Cassandra, and Sessions returned Jackson's pistol to him.

1. The trial court denied Jackson's motion to sever his trial from Clark's.

> A defendant who seeks a severance must show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, this Court will not disturb the trial court's denial of a severance motion. [Cit.] The trial court is to consider whether a joint trial will create confusion of the evidence and law, whether there is a danger that evidence implicating only one defendant will be considered against a co-defendant despite limiting instructions, and whether the defendants are asserting antagonistic defenses. [Cit.]

*Denny v. State*, 281 Ga. 114, 115-116 (1) (636 SE2d 500) (2006). Jackson contends that his defense was hampered by his being tried with Clark, because, unlike Clark, Jackson did not enter the house where the crimes were completed. However, the defendants were not pursuing antagonistic defenses, the evidence of each defendant's role was clear, and the jury was instructed on the law of criminal intent and participation, parties to a crime, and a defendant's mere presence at the crime scene.

Jackson also asserts that the trial of co-indictee Cassandra Jackson was severed from his and Clark's trial, and argues that he was similarly situated to Cassandra and that his trial also should have been separate from Clark's. First, the evidence against Jackson was notably different from that against Cassandra; Jackson was engaged in the formation of the plan to rob Jordan while Cassandra was not, and Jackson supplied Sessions with the pistol that Sessions

used to fire the fatal shots. Further, to the extent that the record discloses why Cassandra was not tried with Clark and Jackson, it appears that she intended to present evidence in her defense that would have implicated Jackson's character. There was no abuse of the trial court's discretion in denying Jackson's motion to sever his trial from Clark's. *Denny,* supra.

2. While in police custody, Jackson gave several statements, each after being given his *Miranda*[2] warnings and signing a waiver of his rights. Jackson moved to exclude evidence of these statements; the motion was denied and a videotape of one statement was played at trial. Jackson asserts his motion should have been granted because the introduced statement was induced by the hope of benefit, see OCGA § 24-3-50, in that the interviewing detective told Jackson that the detective knew he was not the shooter. First, as this Court observed in the appeal of Jackson's co-defendant, "neither the videotape nor a transcript of the audio portion is included in the appellate record," *Clark v. State,* 279 Ga. 243, 244 (2) (611 SE2d 38) (2005), and that is also the situation in Jackson's appeal. Second, "statements attributed to the detective that he knew that [Jackson] was not the triggerman . . . did not constitute the hope of a lighter sentence. Thus, any such comments were not sufficient to taint the voluntariness of [Jackson's] statements. [Cits.]" Id. See also *Pittman v. State,* 277 Ga. 475, 477-478 (2) (592 SE2d 72) (2004).

Jackson also contends that playing the videotape for the jury improperly placed his character into evidence because he was depicted wearing "an orange prison uniform." Again, Jackson has not provided the videotape to this Court, but even if he was so depicted, "evidence that an accused has been confined in jail in connection with the case at issue does not place his character in evidence." *Goldey v. State,* 289 Ga. App. 198, 200 (2) (b) (656 SE2d 549) (2008). See also *Taylor v. State,* 272 Ga. 559, 561 (2) (b) (532 SE2d 395) (2000).

3. As a similar transaction under *Williams v. State,* 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991), the State was permitted to introduce evidence of a prior robbery in which: two weeks before Jordan was killed, Jackson, Clark, Sessions, and another man went to the home of Clifford Jackson ("Clifford"); the four men were invited inside; they talked with Clifford for half an hour; Clark brandished a pistol and declared that they were robbing Clifford; Jackson produced a roll of duct tape; the four men bound Clifford

---

[2] *Miranda v. Arizona,* 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

and his girlfriend with the tape; Jackson and his confederates took from the home a dozen firearms, jewelry, cash, and other items of value.

Under *Williams*, supra,

> [s]imilar transaction evidence must satisfy three elements to be admitted: (1) the evidence must be introduced for a proper purpose; (2) the evidence must establish by a preponderance of the evidence that the defendant perpetrated the similar transaction; and (3) the two transactions must be sufficiently similar or connected so that the existence of the former transaction tends to prove the latter transaction. [Cits.]

*Bryant v. State*, 282 Ga. 631, 634 (3) (651 SE2d 718) (2007). Jackson asserts in his brief that there is no "credible connection" between the earlier robbery and the one which resulted in Jordan's death. "An appellate court will not disturb the findings of the trial court on the issue of similarity or connection of similar transaction evidence unless they are clearly erroneous." *Biggs v. State*, 281 Ga. 627, 629 (2) (642 SE2d 74) (2007). And, the proper focus is on the similarity of the prior incident to the crimes charged, not differences. *Daniels v. State*, 281 Ga. 226, 228 (1) (637 SE2d 403) (2006). Although Jackson notes that the only evidence regarding the prior robbery came from but one of the two victims, and no police report regarding the incident was introduced, the victim testified that he had informed the police, and the trial court did not err in admitting the evidence. *Clark*, supra.

4. Jackson contends that, without the evidence that he argues was improperly admitted, see Divisions 2 and 3, supra, the evidence was insufficient to support a finding that he was involved in any crimes. However, as noted above, the evidence was properly admitted, and the jury was authorized to find Jackson guilty beyond a reasonable doubt of all of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

5. Finally, Jackson takes issue with his sentence for burglary. Jackson was indicted for, and found guilty of, felony murder while in the commission of armed robbery, felony murder while in the commission of burglary, armed robbery, and burglary. As Jackson was found guilty on both felony murder counts, "it was within the trial court's discretion to choose to merge the [armed robbery] rather than the [burglary] into the felony murder count for which appellant was sentenced. [Cits.]" *Hill v. State*, 281 Ga. 795, 797 (1) (b) (642 SE2d 64) (2007). This is what the trial court did, leaving the burglary for independent sentencing. For that crime, Jackson was sentenced

as a recidivist under OCGA § 17-10-7 (c) to a term of 20 years in prison without the possibility of parole.

Jackson asserts in his brief that "[t]here should only be a life sentence with the possibility of parole based on *Funderburk v. State*, 276 Ga. 554 [(580 SE2d 234)] (2003)," but that case is inapposite; there the defendant was sentenced to life in prison without the possibility of parole under OCGA § 17-10-7 (c) for malice murder, despite the statute's explicit statement that "it does not apply to capital felonies." Id. Here, Jackson was not sentenced under OCGA § 17-10-7 (c) for felony murder, but for the separate crime of burglary. And, under the facts of this case, burglary did not merge into the felony murder while in the commission of armed robbery.

Jackson also contends that he would be eligible for parole on his felony murder conviction in 14 years, and that in light of this, a sentence of 20 years without the possibility of parole for burglary is inconsistent and improper. This is not the case; OCGA § 17-10-7 (a) and (c) mandated the maximum 20-year sentence for burglary without the possibility of parole, the sentence was within the statutory limits, and this Court will not disturb it. *Clark*, supra at 247-248 (8).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 27, 2008.

*Jon A. Nixon*, for appellant.
*Kelly R. Burke, District Attorney, Joshua D. Morrison, Assistant District Attorney, Thurbert E. Baker, Attorney General, Reggie A. Lampkin, Assistant Attorney General*, for appellee.