## S10A0970. WALKER v. THE STATE.
### (702 SE2d 415)

NAHMIAS, Justice.

Elbert Sip Walker was convicted of malice murder and other crimes arising out of the shooting death of his girlfriend, Daishia Ward. He raises three issues in this appeal. For the reasons that follow, we affirm.[1]

1. The evidence at trial, viewed in the light most favorable to the verdict, showed the following.

On May 3, 2004, Walker, the victim, and the victim's ten-year-old daughter went to the victim's house. That afternoon, while the daughter was washing dishes in the kitchen, she saw Walker enter her mother's bedroom. The daughter saw Walker shut the door, and she then heard a loud noise that sounded like a firecracker coming from the room. Walker left the bedroom, and the daughter asked Walker about the noise. Walker replied that it was caused by a firecracker. The daughter asked Walker where her mother was, and he said that she was in her room "gossiping." Walker told the daughter that he was going to the store, and the daughter asked to go with him. The daughter went to her room to get her shoes, and when she came back, Walker was gone, as was her mother's car. The daughter knocked on her mother's door, but there was no response.

---

[1] The crimes occurred on May 3, 2004 and Walker was indicted by a Fulton County grand jury on July 16, 2004. At the conclusion of a six-day jury trial, Walker was convicted on March 6, 2006 of malice murder, three counts of felony murder, aggravated assault, armed robbery, two counts of theft by taking (firearm and automobile), possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. The trial court sentenced Walker to life without parole for malice murder (as a recidivist) and merged into the malice murder conviction the convictions for felony murder, aggravated assault, armed robbery, and possession of a firearm by a convicted felon. We note that the felony murder convictions were properly vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372-374 (434 SE2d 479) (1993). The court also imposed a ten-year consecutive sentence for theft by taking a firearm, a one-year concurrent sentence for theft by taking an automobile (commuted to time served), and a five-year sentence for possession of a firearm during the commission of a crime, consecutive to the theft by taking a firearm count. Walker filed a motion for new trial on March 20, 2006, which was later amended by appellate counsel. On May 13, 2009, the trial court resentenced Walker to life with the possibility of parole on the malice murder conviction, after the State agreed that the recidivist punishment was not proper. Following a hearing, the trial court denied the motion for new trial on December 16, 2009. The case was docketed in this Court for the April 2010 term and submitted for decision on the briefs.

She opened the door and found her mother bleeding on the floor, and then went to the home of a neighbor, who called 911.

Police officers who responded to the scene found the victim dead, lying on the floor in a back bedroom with a bullet and shell casing near her head. The victim died from a single gunshot to the head. Walker's car was parked in front of the house. The victim's car, which had been outside her house during the day, was missing.

Marcus Fulks, a distant cousin of Walker's, testified that in April 2004, Walker came to his home to visit and stole a gun from him. On the day of the victim's death, Walker returned the gun to Fulks. Fulks knew that the victim was Walker's girlfriend and after he saw a news report on her shooting, he turned over to police the gun, which contained five unfired bullets. Christopher Robinson, a fire-arms examiner from the Georgia Bureau of Investigation, testified that the bullet and shell casing found at the scene were fired from Fulks's gun.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to enable a rational jury to find beyond a reasonable doubt that Walker was guilty of the crimes of which he was convicted and sentenced. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d 560) (1979).

2. Walker contends that the trial court abused its discretion in several ways when it found that he had knowingly, voluntarily, and intelligently waived his right to have a lawyer represent him at trial.

The trial court initially appointed a public defender, Beth Geoffroy, to represent Walker. From August 2004 through November 2004, Geoffroy filed numerous motions on Walker's behalf. However, after Walker complained to the trial court about Geoffroy, the court appointed another public defender, Jennifer Kiser, to represent him. In April 2005, Kiser informed Walker that a letter that he had sent her had made her feel uncomfortable and had compromised their attorney-client relationship and that the court had appointed him new private counsel, Averick Walker ("Averick"). In August and September 2005, Walker wrote to the trial court complaining that he had not heard from his attorney, that he did not know which attorney was representing him, that he wanted to know his next court date, and that Averick told him that he was withdrawing from the case because the State no longer paid private attorneys to represent indigent defendants.

On February 27, 2006, Walker's case was called for trial with Averick there to represent Walker. At the outset, Averick told the trial court that he and Walker had had some problems and that Walker had sent a letter about Averick to the State Bar's Consumer Assistance Program but had not filed a formal complaint. Averick

said that he had investigated the case and was prepared to try it, that he had spoken with Walker the day before trial, that he had explained to Walker the problems with the case, that Walker had spoken to his family on the morning of trial, and that on the morning of trial, Walker had attacked Averick's character, stating that Averick was "working with the system." Averick also stated that Walker had said he wanted his family to get him another lawyer, that he could not trust Averick, and that he wanted to proceed pro se. Averick advised the court that he was willing to serve as standby counsel.

The prosecutor opposed the appointment of any new counsel and called Walker's mother to the stand to question her about Walker's competency. Walker's mother testified that he had finished the tenth grade, had lived with her until he was about 20 years old, and had never had any mental health issues. The trial court then asked Walker if he desired to represent himself, and Walker responded that, due to the fact the trial was that day, "he had no choice but to do it today." The court stated that, because Walker was on his third lawyer, it had doubts about whether Walker was dissatisfied with trial counsel or was playing the system. Walker responded that, based on his "relationship with [Averick], [he] loved [Averick] as a person," but there had been "incidents that have occurred that I wasn't pleased with. I'm looking for justice . . . and some of the things I heard irritated [sic] the fact that justice existed in this case." Walker did not complain that Averick had not visited him at the jail.

When the trial court again asked Walker if he wanted to proceed pro se, Walker said that it would give him "comfort" to have Averick sit with him but that he wanted to represent himself. The court then conducted an extensive colloquy in which it explained the dangers of self-representation, the nature of the charges against him, the statutory lesser-included offenses, and the range of possible sentences, including the fact (later determined to be inaccurate) that if convicted of murder he would face life without parole. The court also ascertained that Averick had explained to Walker potential defenses and mitigating circumstances Walker could raise. The court asked Walker if he had ever been under the care of a mental health professional or had a mental health evaluation, and Walker said that he had not. Walker also informed the court that no one had forced or threatened him to waive his right to have an attorney. Finally, Walker responded affirmatively when asked "[d]o you, based upon all the discussion we've had today, specifically give up your right to have a lawyer represent you in this case." The trial court found that Walker had made a knowing, intelligent, and voluntary waiver of that right. The trial was then conducted with Walker representing himself and Averick acting as standby counsel.

After the jury returned its guilty verdicts, Walker, still acting pro se, filed a timely motion for new trial. The trial court appointed appellate counsel, but Walker dismissed that lawyer too. The trial court appointed a new appellate counsel, who filed an amended motion for new trial. Appellate counsel also sought and obtained a psychological evaluation of Walker. At the hearing on the motion for new trial, Walker again moved to dismiss counsel, but the trial court denied the motion.

At the hearing, Walker presented the testimony of a forensic psychologist, Dr. Robert Shaffer, who had conducted the court-ordered evaluation. Dr. Shaffer testified that Walker had an estimated intellectual functioning in the low-average range, that he had symptoms of manic grandiosity, and that he exhibited paranoia. The diagnosis was borderline personality disorder. Dr. Shaffer testified that he did not believe that Walker was capable of making a knowing, willing, and voluntary waiver of his right to counsel, but that he did not form any opinion as to Walker's competency to stand trial. The trial court considered this testimony along with the evidence presented prior to trial and Walker's intelligent and articulate participation in the trial. Considering all the evidence, the court found that Walker had not demonstrated that he lacked the competency to waive the right to counsel.

At the new trial hearing Averick was asked about Walker's allegation that Averick had not contacted Walker. Averick testified that while he was at the courthouse in connection with his appointment, he met and discussed the case with Walker. He also testified that he had spent enough time with Walker to prepare for the case and had spent a long time with him one day explaining why they could or could not file certain motions that Walker wanted to file. Averick explained that Walker would become unhappy if Averick did not visit him every day, but he explained to Walker that he could not see him everyday and that lawyers do not "babysit" clients. Averick added that, as the trial date got closer, he "started babysitting [Walker]" and that Walker "got more comfortable." Averick testified that he met with Walker for a long time several days prior to trial and explained his theory of the case to Walker, but Walker had a different theory and Averick had to explain that "we couldn't make an opening statement about what he wanted to do without . . . evidence." Walker, on the other hand, testified that Averick did not visit him until the day before trial.

(a) Walker contends that the trial court erred in finding that his expression of dissatisfaction with trial counsel was a delay tactic that was the functional equivalent of a waiver of appointed counsel. Instead, he argues, the evidence shows that he had a justifiable complaint about Averick and that when the court said it would not

appoint new counsel or grant a continuance so Walker could hire counsel, he felt he had no choice but to represent himself. However, the record authorized the trial court to conclude that Walker's expression of dissatisfaction with his third lawyer on the day of trial was a dilatory tactic that was "the functional equivalent of a knowing and voluntary waiver of appointed counsel." *Bryant v. State*, 268 Ga. 616, 617 (491 SE2d 320) (1997) (punctuation omitted). Moreover, after Walker indicated his desire to proceed pro se, the extensive colloquy between the trial court and Walker established that he made a knowing and intelligent waiver of his right to counsel. See *Faretta v. California*, 422 U. S. 806, 835 (95 SC 2525, 45 LE2d 562) (1975) (holding that the trial court must inform the defendant of the dangers inherent in representing himself so that the record demonstrates that the defendant made a knowing and intelligent waiver of his right to counsel); *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2009) (same).

(b) Walker further contends that his waiver of the right to counsel was not knowingly and voluntarily made because he did not understand the punishment he was facing, because he was misinformed that if convicted of murder, he would be sentenced as a recidivist to life without parole, when in fact his prior conviction for terroristic threats did not authorize imposition of life without parole under OCGA §§ 17-10-6.1 and 17-10-7 (b). Walker has not explained, however, how the knowledge that he might face *lesser* punishment than he believed would have made him less inclined to waive counsel. Furthermore, because the record demonstrates that Walker was aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver, this enumeration is without merit. See *Evans*, 285 Ga. at 68-69 (holding that the trial court need not address each of six relevant factors with the defendant, one of which is the range of possible punishment, if the record shows that the defendant was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver).

(c) Walker also contends that his mental condition prevented him from knowingly and intelligently waiving his right to counsel. However, Walker's only legal argument on this point is that the trial court erred by not conducting a competency hearing prior to trial. A competency determination is necessary only when a court has reason to doubt the defendant's competence. See *Drope v. Missouri*, 420 U. S. 162, 180-181 (95 SC 896, 43 LE2d 103) (1975); *Biggs v. State*, 281 Ga. 627, 629-630 (642 SE2d 74) (2007). As detailed above, the information available and evidence presented to the trial court prior to trial provided no real indication that Walker was incompetent to waive his right to counsel, and thus the court did not err in failing sua sponte to conduct a competency hearing. See id. at 630.

3. Walker contends that he was denied a fair trial and that the State violated the requirements of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), and OCGA § 17-16-4 when it provided Robinson's ballistics report to Averick on the morning of trial.

Robinson had performed a second ballistics examination after Melba Deveaux, the firearms examiner who performed the original comparison, was unable to appear at trial because she lived out of town and was unable to travel because she was pregnant and very close to her delivery date. The prosecutor notified Averick of this situation the week before trial and provided Robinson's report to Walker on the morning of trial. The prosecutor outlined this information after Walker began representing himself, and she requested a pre-trial ruling that Robinson be allowed to testify. Averick stated that, since he was the person who had received the information from the prosecutor before trial, he was probably counsel for "purposes of the information that I received." Averick then stated that, as long as Deveaux was unavailable due to pregnancy, then another person could do the report and testify.

When Robinson took the stand later in the trial, Walker objected to the admission of any ballistics evidence, citing *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982) (setting forth the test for admissibility of evidence of a scientific principle), and to Robinson testifying because his report conflicted with Deveaux's (who had matched the bullet to the gun but not the shell casing). Walker also objected to Robinson being qualified as an expert because the State had not provided him with Robinson's notes, as opposed to his official report. The trial court overruled these objections, and Robinson testified that, in his opinion, the bullet and the shell casing found at the scene were fired from Fulks's gun. Robinson acknowledged on direct that Deveaux reached a different conclusion with regard to the casing. On cross-examination, Walker was able to obtain copies of Robinson's notes, over the State's objection.

(a) Walker failed to raise at trial the objections raised here and therefore may not raise them for the first time on appeal. See *Jones v. State*, 258 Ga. 249, 249 (368 SE2d 313) (1988) (holding that the failure to raise an objection based on *Brady* at trial waives the issue on appeal); *Earnest v. State*, 262 Ga. 494, 495 (422 SE2d 188) (1992) ("Errors not raised in the trial court will not be heard on appeal.").

(b) Walker also contends that when the issue was raised on the morning of trial and Averick agreed to Robinson's testifying, Averick provided ineffective assistance of counsel by failing to request a continuance to review the evidence and have it tested by his own expert. However, to establish ineffective assistance of counsel, a defendant must show, in addition to deficient performance, "that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U. S. 668, 694 (104 SC 2052, 80 LE2d 674) (1984). See also *Miller v. State*, 285 Ga. 285 (676 SE2d 173) (2009). Here, Walker presented no evidence at the motion for new trial hearing to support his bald assertion that there was a reasonable probability that the outcome of the proceeding would have been different had Averick sought a continuance or independent expert testing. Accordingly, even assuming that Walker could properly raise a claim of ineffectiveness against Averick in relation to this particular issue, the trial court did not err in denying the motion for new trial on this ground.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 8, 2010.

*Robert Kenner, Jr.*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.