## S10A1830. HERBERT v. THE STATE.
(708 SE2d 260)

NAHMIAS, Justice.

Jermarae Herbert appeals his 2008 convictions for felony murder and other crimes in connection with the shooting death of Perry Phillips. We affirm.[1]

1. The evidence at trial, viewed in the light most favorable to the verdict, showed the following. On February 17, 2006, Herbert and his co-defendant, Michael McLean, drove from North Carolina with a man identified only as "Slim" and a woman to visit Treimain Thomas and Torrance McMillian in Georgia.[2] They purchased marijuana from the victim at a gas station in Clayton County during the early morning hours of February 18 and then spent the night at Thomas and McMillian's apartment. Later that morning, Herbert and McLean were sitting around the breakfast table with Slim discussing how much they wanted more marijuana. McLean borrowed Thomas's cell phone and arranged to make another drug buy from the victim. After McLean hung up, the discussion turned to the idea of stealing the marijuana and whatever cash the victim had on him. Before leaving the apartment, McLean borrowed Thomas's 9mm handgun and tucked it into his waistband.

Herbert then drove his Ford Expedition back to the gas station, with Slim in the front passenger seat and McLean in the back seat. When they arrived, the victim got into the back seat with McLean and pulled out a bag with marijuana in it. McLean then drew the gun from his waistband and shot the victim once in the abdomen, fatally wounding him. Herbert immediately began to drive away, but he stopped nearby to allow McLean to push the victim's body out of the vehicle. The men returned to the apartment and told Thomas and

---

[1] The victim was killed on February 18, 2006. Herbert was indicted in Clayton County on May 16, 2007, for malice murder, felony murder predicated on armed robbery, armed robbery, and aggravated assault, and a warrant was issued for his arrest. On June 13, 2008, at the conclusion of a five-day trial, the jury acquitted Herbert of malice murder but convicted him of the remaining charges. The armed robbery and aggravated assault convictions merged into the felony murder conviction, and the trial court sentenced Herbert to life in prison. Herbert filed a motion for new trial on June 16, 2008, which was amended on November 10, 2008, and denied on June 17, 2010. Herbert filed a timely notice of appeal to the Court of Appeals, which properly transferred the case to this Court on July 19, 2010. The case was docketed in this Court for the September 2010 term and submitted for decision on the briefs.

[2] Thomas and McMillian were indicted with Herbert and McLean, but the charges were later dead docketed, and they both testified for the State at trial. Slim has never been identified.

McMillian what had happened. Herbert said that McLean was the shooter. Thomas and McMillian said that they could no longer stay at the apartment, and the men decided to go back to North Carolina. Along the way, they threw the murder weapon out the window; it was never recovered. A couple days later, Herbert called McMillian and offered to pay Thomas $200 for his gun.

The victim's body was found near the gas station later that day. It had been raining, and the police noticed a vehicle floor mat at the scene that was unexpectedly dry in comparison to the surrounding area. The police also recovered the victim's cell phone, which led them to Thomas and McMillian because of the call McLean had made from Thomas's cell phone to arrange the drug deal with the victim. Thomas and McMillian gave statements implicating Herbert and McLean in the murder.

Officers then traveled to North Carolina to interview Herbert and McLean. Herbert admitted driving the Ford Expedition to the crime scene but denied any participation in the murder and denied that he went with McLean and Slim to the gas station with the intention of robbing the victim. McLean initially denied going to Georgia that weekend and said that he knew nothing about the victim's death. Later, however, McLean admitted being present and pushing the victim out of the vehicle but claimed that Slim was the shooter. Herbert's Ford Expedition was impounded. It was missing a rear floor mat, and the serial number on the remaining floor mat was later matched to the serial number on the floor mat found at the crime scene.

Herbert contends that his conviction cannot stand because the only evidence from which the jury could conclude that he was a party to the crimes charged was the testimony of alleged accomplices Thomas and McMillian. Herbert relies on OCGA § 24-4-8, which provides that in "felony cases where the *only* witness is an accomplice, the testimony of a *single* witness is not sufficient" and must be supported by the testimony of at least one other witness or by "corroborating circumstances." Id. (emphasis added).[3] As the statutory language indicates, however, "[t]he testimony of one accomplice may be used to corroborate that of another." *Williams v. State*, 280 Ga. 584, 586 (630 SE2d 370) (2006). When viewed in the light most

---

[3] OCGA § 24-4-8 states in full as follows:

The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.

favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find the defendant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 16-2-20 (defining parties to a crime). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Herbert contends that the trial court abused its discretion by denying his motion to sever his trial from McLean's. In a murder case where the death penalty is not sought, the trial court has broad discretion to grant or deny a motion for severance. See OCGA § 17-8-4; *Shelton v. State*, 279 Ga. 161, 162 (611 SE2d 11) (2005). In ruling on a severance motion, the court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses. See *Griffin v. State*, 273 Ga. 32, 33 (537 SE2d 350) (2000).

There were only two defendants here, the law applicable to each defendant was substantially the same, and the evidence at trial showed that Herbert and McLean acted together in killing the victim. Herbert and McLean did raise somewhat antagonistic defenses, in the sense that Herbert pointed to McLean as the shooter and McLean said that Slim was the shooter. That alone, however, is insufficient to require severance, because "unless there is a showing of resulting prejudice, antagonistic defenses do not automatically require a severance." *Green v. State*, 274 Ga. 686, 688 (558 SE2d 707) (2002). See also *Zafiro v. United States*, 506 U. S. 534, 538 (113 SC 933, 122 LE2d 317) (1993) ("Mutually antagonistic defenses are not prejudicial per se.").

Herbert argues that the joint trial harmed him because the evidence against him was weaker than the evidence against McLean. However, it is not enough for the defendant to show that he would have a better chance of acquittal at a separate trial or that the evidence against a co-defendant is stronger. See *Zafiro*, 506 U. S. at 540; *Kelly v. State*, 267 Ga. 252, 253 (477 SE2d 110) (1996). The defendant must show clearly that a joint trial prejudiced his defense, resulting in a denial of due process. See *Howard v. State*, 279 Ga. 166, 171 (611 SE2d 3) (2005). Herbert made no such showing. Accordingly, the trial court did not abuse its broad discretion in denying Herbert's motion for a separate trial.

3. Herbert claims that the trial court should have suppressed his pretrial statement to the police. Herbert concedes that he signed a written waiver of his rights under *Miranda v. Arizona*, 384 U. S. 436

(86 SC 1602, 16 LE2d 694) (1966), but he claims that the officers who interviewed him breached protocol because they had him sign the form but did not have him separately initial each right he waived. This argument is meritless. The detective who took the lead in interviewing Herbert testified that he placed the waiver of rights form in front of Herbert, read each right out loud, and watched as Herbert signed the form. Herbert appeared to understand the rights he was waiving, and he was not threatened or promised anything in return for his waiver. Herbert spoke with the detectives and signed a written statement regarding the crimes before he was arrested. The evidence supports the trial court's finding that Herbert properly waived his *Miranda* rights and that his subsequent statements were made voluntarily.

4. On February 5, 2008, Herbert filed a motion to dismiss the indictment based on an alleged violation of the Interstate Agreement on Detainers (IAD), a congressionally approved compact entered into by 48 states, the federal government, and the District of Columbia that establishes procedures for resolving outstanding criminal charges against a prisoner held in another state. See *New York v. Hill*, 528 U. S. 110, 111 (120 SC 659, 145 LE2d 560) (2000). Georgia is a signatory to the IAD, which is codified at OCGA §§ 42-6-20 to 42-6-25 (the Georgia IAD). The trial court denied the motion on May 14, 2008, but granted Herbert permission to file an out-of-time motion for a speedy trial under the Georgia Speedy Trial Act, OCGA §§ 17-7-170 to 17-7-172, which the court granted. The court then specially set the case for trial, which began on June 9, 2008.

On February 22, 2006, Clayton County issued a warrant for Herbert's arrest in connection with the murder and armed robbery but he was not immediately arrested. Instead, on July 5, 2006, he was convicted in North Carolina of financial identity fraud and sentenced to serve 18 to 22 months in prison. Clayton County sent a copy of the arrest warrant to North Carolina corrections officials and requested that Herbert not be released at the end of his North Carolina prison term but instead be detained for Clayton County. North Carolina officials notified Herbert that a detainer had been placed on him, and on September 29, 2006, Herbert waived extradition to Georgia and requested final disposition of the murder and armed robbery charges. On December 14, 2006, Clayton County received Herbert's waiver and request for final disposition along with information from North Carolina officials about Herbert's sentence and expected release date. The detainer based on the arrest warrant was withdrawn, however, after Herbert was indicted in Clayton County on May 16, 2007, and the trial court issued a new warrant for his arrest based on the indictment. Clayton County requested that a new detainer be placed on Herbert, and he never

waived extradition or requested a final disposition of the second detainer. Instead, an extradition hearing was held, and Georgia officials took custody of Herbert at the end of his North Carolina prison sentence in October 2007.

A defendant has the constitutional right to demand a speedy trial even if he is incarcerated in another jurisdiction. See *Smith v. Hooey*, 393 U. S. 374, 383 (89 SC 575, 21 LE2d 607) (1969) (holding that where a defendant in federal custody in another state demands a speedy trial on state criminal charges, the state must make diligent, good-faith efforts to secure his presence for trial). The IAD provides the mechanism for states to satisfy their obligation to provide a speedy trial for an out-of-state prisoner. By its terms, the Georgia IAD applies only to detainers that are based on "any untried indictment, information or complaint." OCGA § 42-6-20 (Art. III (a)). It does not apply to detainers based on arrest warrants. See *State v. Carlton*, 276 Ga. 693, 696 (583 SE2d 1) (2003) ("While it may be common practice for the State to attempt to detain a prisoner based upon an arrest warrant for other charges, as in this case, this Court must conclude that an arrest warrant, in and of itself, is insufficient to invoke the speedy trial protections of the IAD."). Herbert acknowledged this point in the trial court but argued that once the indictment against him was filed on May 16, 2007, he was subject to a detainer based on an untried indictment. Herbert argued that at that time, his pre-indictment waiver of extradition and request for final disposition on the arrest warrant triggered the Georgia IAD's 180-day deadline to start his trial or dismiss the indictment. That would mean that his trial had to start by November 12, 2007, but the trial did not begin until June 9, 2008. Herbert maintains that the trial court therefore erred in denying his motion to dismiss the indictment with prejudice.

This argument is flawed. In 2006, Herbert waived extradition to Georgia and requested final disposition of the first arrest warrant, but that warrant did not come under the IAD. When he was later indicted in May 2007, the detainer based on the first arrest warrant was withdrawn and Clayton County requested a new detainer based on the untried indictment, but Herbert never waived extradition for trial on the indictment or requested a final disposition of the detainer based thereon. Thus, Herbert did not comply with the procedural requirements of the Georgia IAD, the 180-day deadline was never triggered, and there was no violation of the Georgia IAD. See *Clater v. State*, 266 Ga. 511, 512-513 (467 SE2d 537) (1996) ("According to the clear wording of Article III (a), the right of a prisoner to be tried within 180 days accrues only after the precise operational procedures set forth in the IAD are completely satisfied. It is incumbent upon the prisoner to initiate these procedures,

and . . . the notice provisions of Article III (b) must be strictly complied with." (footnotes omitted)). Accordingly, the trial court properly denied Herbert's motion to dismiss the indictment with prejudice.

5. At trial, the prosecutor asked the detective who led the interrogation of Herbert, "Did Mr. Herbert tell you where the gun was?", referring to the murder weapon. The detective began to respond, "I believe he said they threw it out on the side —," but Herbert interrupted with an objection. Herbert then moved for a mistrial on the ground that the detective's answer violated his confrontation right under *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), asserting that the statement implicating Herbert in the disposal of the gun was actually made by his co-defendant McLean.[4] The trial court denied a mistrial but instructed the jury to disregard the detective's answer.

A defendant's Sixth Amendment right to be confronted with the witnesses against him is violated when co-defendants are tried jointly and the testimonial statement of a co-defendant who does not testify at trial is used to implicate the other co-defendant in the crime. See *Bruton*, supra; *Boone v. State*, 250 Ga. App. 133, 135-136 (549 SE2d 713) (2001). The detective's testimony did not violate Herbert's rights under *Bruton*, however, because the statement he recounted was made by Herbert himself rather than by a co-defendant. That is what the question and truncated answer indicated, and after the jury was sent out, the detective confirmed that he never interrogated McLean and that the statement about the gun was made to him by Herbert. Thus, this enumeration of error is unfounded.

6. A few days after the crimes, McMillian picked Herbert out of a photographic lineup and filled out and signed a "Summary of Photograph Identification," which stated, "I have identified photograph # 3 as being the person or one of the persons that I observed" on February 18, 2006, "discussing meeting with this guy and buying weed and maybe robbing him," and "Jay [Jermarae Herbert] had the pistol . . . that belonged to Treimain Thomas." Testifying at trial, McMillian confirmed that he wrote and signed the summary but claimed that he did not tell police that he heard Herbert talking about robbing the victim. The trial court overruled Herbert's objection based on lack of foundation and admitted the summary after the

---

[4] All three briefs filed in this appeal manage to misquote the detective's answer. Herbert omits the word "out," but the omission is insignificant. The District Attorney attributes the statement being recounted to McLean instead of Herbert, which would raise the possibility of a *Bruton* violation. The Attorney General substitutes "he" for "they" and also omits the word "out."

detective who prepared the photographic identification testified that he saw McMillian fill out and sign the document.

Herbert argues that the summary should have been excluded because McMillian denied at trial that it was an accurate description of what he told the police. But the summary was itself a statement to the police, and both McMillian and a detective testified that the summary was in McMillian's handwriting and was signed by him. Thus, the trial court properly overruled the objection based on lack of foundation.

Alternatively, Herbert contends that the summary should have been excluded because McMillian testified that he did not remember telling the police that he heard Herbert discuss robbing the victim, rather than denying that he told the police that fact, and therefore the summary should not have been admitted to impeach McMillian's testimony. This objection was not raised at trial, however, and it will not be considered for the first time on appeal. See *Walker v. State*, 288 Ga. 174, 179 (702 SE2d 415) (2010) (" 'Errors not raised in the trial court will not be heard on appeal.' " (citation omitted)).

7. In closing argument, the prosecutor told the jury that "the detectives told you that back in 2006, just a few days after this happened, they said they planned — they said they were going to go rob the guy they bought the Marijuana from the night before." Herbert objected on the ground that there was no testimony from the detectives that Herbert made such a statement to them. The trial court overruled the objection and instructed the jury that "what the lawyers say is not evidence." Herbert contends that the trial court erred. However, "[t]he prosecutor is entitled to emphasize the evidence favorable to [her] contention [and] to discuss and draw inferences from factual matters in evidence." *Durrence v. State*, 287 Ga. 213, 217-218 (695 SE2d 227) (2010) (punctuation omitted). In the summary discussed in Division 6, McMillian wrote that he observed Herbert "discussing meeting with this guy and buying weed and maybe robbing him." Thus, there was an adequate evidentiary basis for the prosecutor's argument, and the trial court properly overruled Herbert's objection.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 18, 2011.

*Brandon Lewis*, for appellant.
*Tracy Graham-Lawson, District Attorney, Luana Popescu, Reggie A. Lampkin, James E. Butler III, Assistant District Attorneys,*

*Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.