**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

July 12, 2012

# In the Court of Appeals of Georgia

A12A0466. WILLIAMS v. THE STATE.

DILLARD, Judge.

Following a jury trial, Dante Pierre Williams was convicted of armed robbery, three counts of aggravated assault with a deadly weapon, burglary, and two counts of possession of a firearm during the commission of a crime. On appeal, Williams challenges the sufficiency of the evidence to support his convictions. Williams further contends that the trial court erred by denying his request to charge on identity; denying his motion to suppress evidence found in a car in which he was driving; admitting evidence of two photo lineups; denying his motion for severance; and failing to merge his two convictions on possession of a firearm during the commission of a crime. We find no error and affirm Williams's convictions on the grounds asserted. As set forth *infra* in Division 6, however, because one of

Williams's convictions on aggravated assault merged with his armed-robbery conviction as a matter of law, we remand this case to the trial court to vacate that conviction and resentence Williams in accordance with this opinion.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on the afternoon in question, Williams and his co-defendant, Kinard Hall, went to the apartment of the victims, Alisha Paul and Percy Burdine.[2] As Paul opened the door, Williams and Hall, both armed, forced their way into the apartment.[3] The men ordered Paul to sit on the couch. Williams, brandishing a shotgun, remained with Paul. Hall, brandishing a handgun, proceeded to the master bathroom, where he placed his weapon directly into Burdine's face and demanded to know "[w]here the shit at?" Understanding Hall to be referring to valuable musical equipment that had previously been stored in the apartment, Burdine informed him that it was no longer there.

---

[1] *See Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

[2] Because Williams was jointly tried with Kinard Hall, the factual discussion of this case relies heavily upon those facts laid out in our prior opinion involving the appeal of Hall. *See Hall v. State*, 313 Ga. App. 66 (720 SE2d 181) (2011).

[3] Prior to the date of the crimes, Hall dated Paul's mother and lived in the apartment with Paul and Burdine.

At some point, Hall became temporarily distracted and directed his attention toward the front door, at which time Burdine jumped through the bedroom window to escape. Williams and Hall then ran from the apartment. On the way out the door, Hall took the victims' Xbox game console.

Hearing the commotion, Paul's brother, who lived in the apartment directly across the hall, opened the door to see what was happening. One of the gunman ordered him to "[g]et back inside," and then Hall fired a gunshot through the door. Williams and Hall ran from the apartment complex onto a wooded path leading to a second housing development, where they were observed leaving in a white vehicle.

During the ensuing investigation, Paul, Burdine, and Paul's brother identified Hall by name as one of the perpetrators. Paul reported that the second gunman was shorter and darker skinned than Hall and wore black clothing. A separate witness described seeing the two gunmen—one taller, one shorter, one lighter, one darker, one of whom was wearing a dark jacket with an orange interior and a fur-lined hood, and the other wearing all black—flee in a white vehicle.

Law-enforcement officers obtained an arrest warrant for Hall and, after failing to locate him at his last-known address, proceeded the following day to the apartment complex where it was believed Hall resided with his girlfriend. As the officers were

in the parking lot of the complex, Williams and Hall drove up in a vehicle matching the description given by the eye witness.[4] Having previously seen a picture of Hall, the officers recognized him immediately and conducted a stop of the vehicle. Hall was formally arrested and Williams was temporarily placed in handcuffs.

The officers saw in plain view two dark jackets, one with an orange interior and fur lining, sitting on the back seat of the vehicle and seized them. They proceeded to search the vehicle as well as the apartment, but did not find the stolen XBox. Consequently, although Williams matched the physical description of the second gunman as given by Paul and the other witness, the officers took a photograph of him for the purposes of creating a photo lineup, and released him. Paul subsequently identified Williams as the second gunman from the photographic lineup.

A witness who lived in the same apartment complex as Paul and Burdine told the investigating officers that prior to the robbery, Hall and a friend had come to his apartment in a white car and Hall was asking questions about Burdine. Specifically, Hall asked the witness if Burdine was doing well financially, and also inquired as to the wooded path running behind the complex. The witness subsequently identified

---

[4] Hall's girlfriend and her two children were in the back of the vehicle.

Williams from the photo lineup as being the man that was with Hall at the time of the exchange.

Williams was arrested, and both Williams and Hall were tried jointly and convicted of each of the crimes charged. This appeal by Williams follows.

1. Williams makes a general challenge to the sufficiency of the evidence. Contrary to his assertion, however, the evidence set forth above was sufficient to sustain his convictions on armed robbery,[5] three counts of aggravated assault with a deadly weapon,[6] burglary,[7] and two counts of possession of a firearm during the

---

[5] *See* OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon . . . .").

[6] *See* OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury . . . ."). A person commits an assault when he or she "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2).

[7] *See* OCGA § 16-7-1 (a) ("A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another . . . ."). This statute has since been amended, however the amendment is applicable to this case or relevant to this appeal. *See* 2012 Ga. Laws 709.

commission of a crime.[8] Although Williams contends that the evidence against him was purely circumstantial, Paul's identification of him as the second gunman during the photographic lineup constitutes direct evidence of his guilt.[9]

2. Williams next argues that the trial court erred in denying his request to charge on the issue of identity. The trial court gave the following charge:

> Identity is a question of fact for you to determine. Your determination of identity is dependent upon the credibility of the witness or witnesses offered for this purpose. You should consider all the facts and circumstances charged with you regarding the credibility of witnesses.

> It is for you to say whether or not the evidence in this case – under the evidence in this case, the testimony of the witnesses and the facts and circumstances of the case sufficiently identify this Defendant or these Defendants beyond a reasonable doubt as the perpetrator or perpetrators of the alleged crime, or that the Defendant or Defendants

---

[8] *See* OCGA § 16-11-106 (b) (1) ("Any person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of . . . [a]ny crime against or involving the person of another . . . and which crime is a felony, commits a felony . . .").

[9] *See Johnson v. State*, 236 Ga. App. 252, 256 (3) (511 SE2d 603) (1999); *see also* OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

was or were a party to it. It is not necessary that the Defendants . . . show that another person committed the alleged offense.

If you do not believe that the Defendants have been sufficiently identified as the persons who committed the alleged crime or what was or were a party to it, or if you have any reasonable doubt about such, then it would be your duty to acquit the Defendants.

The burden of proof rests upon the State to prove beyond a reasonable doubt the identity of these Defendants as the persons who committed the crime alleged in this bill of indictment.

Williams does not challenge the accuracy of the charge given (indeed, he requested it) , but instead contends that the trial court erred in denying his request to further instruct,

[s]ome, but not all, of the factors you may consider in assessing reliability of identification are:

1) the opportunity of the witness to view the alleged perpetrator at the time of the alleged incident;

2) the witness's degree of attention toward the alleged perpetrator at the time of the alleged incident;

3) the possibility of mistaken identity;

4) whether the witness's identification may have been influenced by factors other than the view that the witness claimed to have; and

5) whether the witness on any prior occasion did not identify the defendant int his case as the alleged perpetrator.

It is error to refuse to give a charge only when the request is "a correct statement of law that is pertinent and material to an issue in the case and not substantially covered by the charge actually given."[10] On review of the trial court's refusal to give a requested charge, we apply the abuse-of-discretion standard.[11]

As given, the trial court "fully covered the issues of identification, mistaken identity and reasonable doubt."[12] The jury was informed that it was required to

---

[10] *Walton v. State*, 272 Ga. 73, 75 (4) (526 SE2d 333) (2000) (punctuation omitted); *see Turner v. State*, 314 Ga. App. 263, 264 (1) (724 SE2d 6) (2012) ("A refusal to give a requested jury charge is not error unless the request is entirely correct and accurate; is adjusted to the pleadings, law, and evidence; and is not otherwise covered in the general charge." (punctuation omitted)).

[11] *See Turner*, 314 Ga. App. at 263-64 (1).

[12] *Shepherd v. State*, 234 Ga. 75, 77 (2) (214 SE2d 535) (1975); *see Hightower v. State*, 225 Ga. 681, 682-83 (2) (171 SE2d 148) (1969); *Strickland v. Mayor & Council of City of Athens*, 111 Ga. App. 280, 280 (2) (141 SE2d 594) (1965); *see also Payne v. State*, 248 Ga. App. 158, 161 (3) (a) (545 SE2d 336) (2001) ("The failure to give requested instructions in the exact language requested is not a ground for new trial where the charge given substantially covers the same principles.").

8

determine whether the eyewitness identification was sufficiently reliable to satisfy the State's burden of proving that Williams was the perpetrator of the crimes alleged based upon its assessment of the credibility of the witnesses and the facts and circumstances presented. It was not error for the trial court to deny Williams's request to give a consistent, but more detailed, charge directing the jury as to what factors they could consider in making that assessment.[13] As such, we find no abuse of discretion.[14]

3. Williams argues that the evidence obtained from the search of the vehicle should have been suppressed as the product of an illegal search. We disagree.

---

[13] We note that the factors contained in the requested charge originated from *Neil v. Biggers*, 409 U. S. 188, 199-200 (III) (93 SCt 375, 34 LEd2d 401) (1972), and provide guidance in determining whether an impermissibly suggestive identification procedure resulted in a substantial likelihood of irreparable misidentification. As discussed in Division 4, *infra*, the trial court held that the identification procedure in this case was not impermissibly suggestive. Regardless, nothing prevented Williams's counsel from arguing those factors to the jury.

[14] *See Taylor v. State*, 272 Ga. 744, 746 (1) (534 SE2d 67) (2000) ("The trial court's charge, as actually given, was full and fair and substantially covered all the legal principles relevant to the determination of appellant's guilt." (punctuation omitted)); *see also Petty v. State*, 283 Ga. 268, 271 (4) (658 SE2d 599) (2008) (trial court did not err in denying request to charge when the given charge otherwise covered the correct legal principles); *Turner*, 314 Ga. App. at 265 (1) (same).

The search of the vehicle, and the evidence obtained, was authorized as a search incident to a lawful arrest. At the time that the officers conducted a stop of the vehicle, they had an active arrest warrant for Hall, who they recognized, and who was with an individual matching the physical description of the second gunman, driving in a vehicle similar to one seen leaving the crime scene. Prior to entering the vehicle, the officers viewed clothing on the backseat, which they readily observed matched the description given to them of the clothing worn by the two gunman at the time of the crime. As the Supreme Court of the United States recently reiterated, the search of a vehicle incident to a lawful arrest is justified when "it is reasonable to believe the vehicle contains evidence of the offense of arrest."[15] Under these circumstances, it was infinitely reasonable for the officers to believe that the vehicle possibly contained evidence of the crime under investigation.[16]

4. Williams next argues that the trial court erred in failing to suppress the identification evidence because the lineup procedure was impermissibly suggestive.

---

[15] *Arizona v. Gant*, 556 U.S. 332, 351 (VI) (129 SCt 1710, 173 LE2d 485) (2009); *accord Hawkins v. State*, 290 Ga. 785, 786 (723 SE2d 924) (2012).

[16] *See Hawkins*, 290 Ga. at 787-88.

He specifically argues that an officer told Paul that the photographic lineup contained the second suspect.[17]

First, we note that the appellate record does not contain a transcript of the motion-to-suppress hearing[18] or the audio recording of the photographic lineups. Regardless, even assuming that the officer did indicate to Paul that the lineup contained a photograph of the second suspect as alleged, it does not render the identification procedure impermissibly suggestive.[19] Rather, an identification

---

[17] To the extent that Williams also argues that the pretrial identifications by Paul and the second witness, both of which occurred prior to Williams being arrested or charged, should be suppressed because he was not represented by counsel, his argument lacks merit. *See Mitchell v. State*, 236 Ga. 251, 255 (2) (223 SE2d 650) (1976) ("There is no constitutional right to counsel at a pre-indictment lineup."); *Brown v. State*, 160 Ga. App. 226, 226 (1) (286 SE2d 487) (1981) (holding that the trial court's failure to suppress evidence of the lineup was not error because "[t]he defendant did not have a right to have counsel present unless he has been formally charged with a crime"); *see also Godbee v. State*, 232 Ga. 259, 262 (206 SE2d 432) (1974).

[18] We made several attempts to obtain the transcript from the trial court but were unable to do so, because it appears that the hearing transcript was never filed with that court.

[19] *See Clark v. State*, 271 Ga. 6, 13 (7) (b) (515 SE2d 155) (1999) (holding that, although it should be avoided, making "a statement [informing the person viewing the lineup that the suspect is present in it] does not make a lineup impermissibly suggestive [because] the very fact that a lineup is being conducted suggests that a suspect is contained therein").

11

procedure is impermissibly suggestive "when it leads the witness to an all but inevitable identification of the defendant as the perpetrator" of the crime.[20] And here, there was nothing about the identification procedure that would have inevitably lead Paul to identify Williams as the gunman.[21] The lineup consisted of photographs of six males, all of whom were the same race, appeared to be approximately the same age, and had similar hairstyles, facial hair, and facial features. Thus, no one photograph stood out from the others. It follows then, that the trial court did not err in concluding that the identification procedure was not impermissibly suggestive and in denying Williams's motion to suppress.[22]

5. Williams further argues that the trial court erred in denying his motion for severance. Williams's argument is unavailing.

---

[20] *Id.* at 12 (7) (b) (punctuation omitted).

[21] Because we conclude that the lineup was not impermissibly suggestive, we need not consider the factors set forth in *Neil v. Biggers,* 409 U. S. at 99-200 (III), as to whether there was substantial likelihood of misidentification. *See Jones v. State*, 303 Ga. App. 366, 367 (1) (693 SE2d 549) (2010) ("We need not consider the issue of irreparable misidentification unless the array is impermissibly suggestive." (punctuation omitted)).

[22] *See Jones*, 303 Ga. App. at 367 (1) (affirming trial court's holding that a photographic array that contained men of the same race, general age, and similar hair and features was not impermissibly suggestive); *Johnson v. State*, 290 Ga. App. 255, 260 (2) (659 SE2d 638) (2008) (same).

A trial court has broad discretion when determining whether to sever the trials of co-defendants.[23] When making its assessment, the trial court should consider "(1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses."[24]

In the case *sub judice*, Williams does not assert a likelihood of confusion or an antagonistic defense, but argues only that he was prejudiced by the strength of the identification evidence against Hall. But it is not enough for the defendant to show "that he would have a better chance of acquittal at a separate trial or that the evidence against a co-defendant is stronger."[25] Rather, the defendant must show clearly "that a joint trial prejudiced his defense, resulting in a denial of due process."[26] Williams

---

[23] *See Tillman v. State*, 251 Ga. App. 330, 331 (1) (554 SE2d 305) (2001) ("Whether a motion for severance should be granted rests in the sound discretion of the trial court.").

[24] *Herbert v. State*, 288 Ga. 843, 845 (2) (708 SE2d 260) (2011).

[25] *Herbert*, 288 Ga. at 845 (2); *see Zafiro v. U. S.*, 506 U. S. 534, 540 (II) (113 SCt 933, 122 LE2d 317) (1993).

[26] *Herbert*, 288 Ga. at 845 (2); *see Howard v. State*, 279 Ga. 166, 171 (4) (611 SE2d 3) (2005).

13

has made no such showing, and therefore the trial court did not err in denying his motion for severance.[27]

6. Finally, Williams asserts that the trial court erred in failing to merge his two convictions on possession of a firearm during the commission of a crime. This issue has been decided adversely to Williams by the Supreme Court of Georgia. In *State v. Marlow*,[28] the Court held that when "multiple crimes are committed together during the course of one continuous crime spree, a defendant may be convicted once for possession of a firearm during the commission of a crime as to every individual victim of the crime spree."[29] Because this crime involved two victims and two separate weapons, the trial court did not err in failing to merge the two convictions.[30]

---

[27] *See Herbert*, 288 Ga. at 845 (2); *Tillman*, 251 Ga. App. at 331-32 (1).

[28] 277 Ga. 383 (589 SE2d 69) (2003).

[29] *Id*. at 386 (2) (c); *see* OCGA § 16-11-106 (b) (1).

[30] *See Marlow*, 277 Ga. at 386 (2) (c); OCGA § 16-2-20 ("Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."); *see also Davis v. State*, 279 Ga. 11, 13 (4) (608 SE2d 628) (2005); *Walker v. State*, 305 Ga. App. 607, 613 (1) (c) (699 SE2d 902) (2010). *Compare Stovall v. State*, 287 Ga. 415, 420-21 (5) (696 SE2d 633) (2010) (holding that appellant's separate convictions on possession of a firearm during the commission of a crime merged when the continuous crime involved only a single victim).

As we held in the case of Williams's co-defendant, however, Williams's conviction for aggravated assault against Paul should have merged into his armed-robbery conviction.[31] We therefore remand this case to the trial court with direction that it vacate Williams's conviction and resentence for the aggravated assault of Paul.[32] We affirm in all other respects.

*Judgment affirmed in part and case remanded with direction. Ellington, C. J., and Phipps, P. J., concur.*

---

[31] *See Hall*, 313 Ga. App. at 68-69; *see also Long v. State*, 287 Ga. 886, 889 (2) (700 SE2d 399) (2010); *Drinkard v. Walker*, 281 Ga. 211, 212-13, (636 SE2d 530) (2006).

[32] *See McKenzie v. State*, 302 Ga. App. 538, 539 n.2 (1) (691 SE2d 352) (2010) ("[A] sentence that imposes punishment on two separate convictions that should have been merged is void, and void judgments may be vacated at any time in any court." (punctuation omitted)); *see also* OCGA § 17-9-4.