**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)** **http://www.gaappeals.us/rules/**

**November 29, 2012**

# In the Court of Appeals of Georgia

A12A1423. DAVIS v. THE STATE.                                    AD-054C

ADAMS, Judge.

Undreas Davis was convicted by a jury of three counts of theft by taking and twelve counts of financial identity fraud.[1] Davis appeals the trial court's judgment sentencing him as a recidivist to fifteen consecutive ten-year terms, for a total of one hundred fifty years, without the possibility of parole. Davis contends that the trial court abused its discretion in sentencing him to a grossly disproportionate sentence

---

[1]Although Davis's notice of appeal also cites the order denying his motion for new trial on the general grounds and the trial court denied Davis's motion without a hearing , Davis does not argue on appeal that the evidence was insufficient to support his convictions. Moreover, the appellate record contains no trial transcript. Accordingly, we cannot address the facts underlying Davis's convictions, and we must assume that the trial court properly denied the motion for new trial on the general grounds. See *Arnold v. State*, 305 Ga. App. 45, 48 (2) (699 SE2d 77) (2010) (in absence of transcript, appellate court must presume trial court's findings on evidence were correct). Thus, Davis's convictions must be affirmed.

of 150 years without the possibility of parole for these property crimes and further asserts that the trial court erred in considering his federal conviction for purposes of recidivist sentencing under OCGA § 17-10–7 (c). We agree that the trial court abused its discretion in sentencing Davis, and we accordingly reverse Davis's sentence and remand for re-sentencing in accordance with this opinion. But we make no ruling on Davis's second contention as the resolution of that issue will depend upon any evidence presented and the trial court's rulings after remand.

Davis was convicted on March 30, 2009, and his sentencing hearing began on April 13, 2009. At that hearing, the prosecution introduced certified copies of three prior felony convictions, two from Michigan and one federal, in support of the State's request for recidivist sentencing. Davis posed no objection to the two Michigan convictions, for uttering and publishing a false, forged, altered or counterfeit instrument and for making a false statement of a material fact in an application for a certificate of title. Davis's counsel objected, however, to the introduction of his federal felony conviction for theft or receipt of stolen mail in violation of 18 U. S. C. § 1708. He argued that the State had failed to establish that this violation would be considered a felony under Georgia law as required under OCGA § 17-10-7 (c). The trial court continued the sentencing hearing at the State's request "to give the State

2

an opportunity to show the Court whether or not this conviction can be considered by the Court in terms of imposing recidivist punishment. . . ."

When the hearing continued on May 5, 2009, the State proffered additional evidence concerning Davis's federal conviction for theft by receiving stolen mail, including a Rule 11 plea agreement, a transcript of Davis's guilty plea hearing and testimony from Davis's Georgia federal probation officer. The plea agreement and the transcript were admitted without objection. Although the prosecution represented that it was introducing a certified copy of the Rule 11 plea agreement, the only copy in the record is uncertified and is part of a packet of materials prepared and attached to a memorandum by Davis's federal probation officer in Georgia, which was addressed to the trial judge and counsel. The record does not contain a transcript of Davis's guilty plea. The prosecutor noted that the plea agreement contained stipulations by Davis admitting that he had possessed at least 800 pieces of mail at his residence; the mail was stolen; the mail contained the names and addresses of individuals who did not reside at his address; and the contents of the stolen mail were used to cause a loss of at least $10,600 to postal patrons. Additionally, Davis's federal probation officer testified, again without objection, based upon her reading of a federal pre-sentencing report, presumably prepared in Michigan where the crime occurred, that Davis had

3

used "several credit cards to purchase several items," and that she "believe[d]" that in 2003 one transaction occurred in which he purchased $5300 in equipment. It does not appear that the pre-sentencing report was introduced into evidence.

Although the trial court acknowledged it was a close question, the court found, based upon this evidence, "that the conduct that [] Davis is currently on federal probation for is virtually identical to the conduct for which he has been convicted by the jury in this case, the possession of other persons' identifying information, specifically mail[2] that at least, . . . , has your name on it and names are identifying information as listed in the statute." In addition, the trial court found that the information that the victims in the federal case had suffered a loss in excess of $10,000, made the federal conviction subject to consideration under OCGA § 17-10-7 (c). Accordingly, the trial court sentenced Davis as a recidivist, sentencing him to ten years for each of the fifteen convictions to run consecutively to one another.

1. Davis contends that the trial court abused its discretion in sentencing him to fifteen consecutive ten-year sentences without the possibility of parole for the property crimes charged in this case, amounting to cruel and unusual punishment.

---

[2] The trial court also indicated that credit cards Davis apparently used to make purchases belonged to the mayor of Douglasville and his wife, and that the mayor was present at the sentencing hearing.

4

In analyzing this issue, we consider Davis's sentence in the aggregate because it is evident from the transcript of the sentencing hearing that the trial court intended to sentence Davis to 150 years so that he would spend the rest of his life in prison:

> I find that Mr. Davis is a career criminal. . . . Because other jurisdictions and other courts have refused to call Mr. Davis to justice, he's been allowed to roam free and victimize other people. Which is so often the case that people's criminal careers come to an end in Douglas County, Georgia as yours ha[s], Mr. Davis, because it's the sentence of the Court that you serve ten years in prison for all 15 counts, all those sentences to run consecutively for a total of 150 years without benefit of parole. You will never victimize anyone again, sir, because you'll be in prison for the rest of your life.

We acknowledge that "it is well established that the trial court has the discretion to impose sentence within the parameters prescribed by the statute and if the sentence is within the statutory limits, the appellate courts will not review it." (Citation, punctuation and footnote omitted.) *Taylor v. State,* 261 Ga. App. 248, 249 (3) (582 SE2d 209) (2003). See also *Anderson v. State,* 246 Ga. App. 189, 191 (2), (539 SE2d 879) (2000); *Pollard v. State,* 230 Ga. App. 159, 161 (5) (495 SE2d 629) (1998). A trial court is also granted authority to impose consecutive, as opposed to concurrent, sentences. See *Hampton v. State*, 289 Ga. 621, 627 (6) (713 SE2d 851)

5

(2011); OCGA § 17-10-10 (a). Given the trial court's authority in sentencing and the discretion owed to the legislature in establishing sentences, an appellate court will overturn a sentence otherwise authorized by law only in extremely rare instances. *Adams v. State*, 288 Ga. 695, 701-702 (4) (707 SE2d 359) (2011). We conclude, however, that this case presents one of those rare instances that shocks the conscience as Davis's sentence is grossly disproportionate to his crimes.

In considering Davis's claim of disproportionate sentencing, we apply a two-step process in which we first compare the gravity of the offense involved to the severity of the punishment to determine if an inference of gross disproportionality arises; if such an inference arises, we compare the defendant's sentence to sentences received by other offenders in Georgia or other jurisdictions for the same crime to determine if the inference still stands. The Georgia Supreme Court explained the process as follows:

> Outside the context of the death penalty, of extreme cases such as life imprisonment as punishment for overtime parking, and … of life without parole for a juvenile convicted of non-homicide crimes, successful challenges to the proportionality of legislatively mandated terms of imprisonment should be "exceedingly rare." [Cit.] Where, as here, no categorical Eighth Amendment restriction applies, we must in the following manner "determin(e) whether a sentence for a term of years

6

is grossly disproportionate for a particular defendant's crime. A court must begin by comparing the gravity of the offense and the severity of the sentence. (Cit.) '(I)n the rare case in which (this) threshold comparison ... leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." [Cit.] We have "emphasize(d) that it is the 'rare case( )' in which the threshold inference of gross disproportionality will be met and a rarer case still in which that threshold inference stands after further scrutiny. (Cit.)" *Humphrey v. Wilson,* [282 Ga. 520], 532(3)(g) [652 SE2d 501 (2007) ] (a rare case because of the legislative sea change in the punishment for consensual teenage oral sex). "'(A) sentence which is not otherwise cruel and unusual does not become so simply because it is "mandatory." (Cit.)' (Cit.) 'Legislative enactments constitute the clearest and most objective evidence of how contemporary society views a particular punishment. (Cit.) As a result, the issue of punishment is generally one for the legislative branch, and legislative discretion is deferred to unless the sentence imposed shocks the conscience. (Cit.)'"

*Jones v. State*, 290 Ga. 670, 675-676 (3) (725 SE2d 236) (2012), quoting *Adams v. State*, 288 Ga. at 701-702 (4). Moreover,

[a] presumption arises when a defendant is sentenced within the statutory limits set by the legislature that such sentence does not violate the Eighth Amendment's guarantee against cruel and unusual punishment. Such presumption remains until a defendant sets forth a

7

factual predicate showing that such legislatively authorized punishment was so overly severe or excessive in proportion to the offense as to shock the conscience.

(Citation and footnote omitted.) *Gresham v. State*, 303 Ga. App. 682, 689 (4) (695 SE2d 73) (2010).

In this instance, Davis received a total sentence of one hundred fifty years without the possibility of parole, effectively exceeding the trial court's stated intent of a life sentence without parole, for three counts of theft by taking and twelve counts of identity fraud. Comparing the gravity of these property-related offenses with the severity of the sentence, we find that an inference of gross disproportionality arises. In effect, Davis's sentence for these non-violent property crimes is the most severe punishment imposed by the State of Georgia on any criminal for any crime, other than capital punishment.

And in comparing sentences for other similar offenders, we found no other Georgia cases in which such a severe sentence was imposed for theft by taking or identity fraud, even in cases of recidivism. See e. g. *Hight v. State*, 302 Ga. App. 826, 828 (4) (692 SE2d 69) (2010) (defendant convicted of two counts of burglary, four counts of theft by taking and criminal trespass, and "[a]fter prior convictions were

proved on twenty-four felony counts in eight different indictments (at least three of which resulted in felony sentences of confinement), the trial court sentenced Hight to two consecutive terms of twenty years to serve in confinement, based on the two guilty verdicts of burglary (merging the remaining counts of the indictment) and Hight's recidivism."); *McIntosh v. State*, 287 Ga. App. 293 (651 SE2d 207) (2007) (first offender who entered non-negotiated guilty plea to one count of forgery in first degree and seven counts of identity fraud "was sentenced to ten years to serve on the forgery count, five consecutive years on probation on the first count of identity fraud, and ten years to serve on each remaining count, to be served concurrently with the sentence on forgery."); *Jones v. State*, 285 Ga. App. 822 (648 SE2d 133) (2007) (defendant found guilty of financial identity fraud and theft of services and sentenced to ten years imprisonment); *Reid v. State*, 235 Ga. App. 887, 889 (2) (510 SE2d 851) (1999) ("Defendant was sentenced as a recidivist to twenty years, ten to serve and the remaining ten suspended, on the count of theft by taking and twelve months to serve consecutively for the offense of giving a false name.").

Only where a defendant was convicted of at least one serious violent felony in addition to a charge of theft by taking or identity fraud were sentences of life imprisonment or beyond imposed. See e. g. *Adel v. State*, 290 Ga. 690, n. 1 (723 SE2d

9

666) (2012) (life imprisonment for malice murder plus ten years for theft by taking); *Powell v. State*, 289 Ga. 901, n. 1 (717 SE2d 215) (2011) (life imprisonment for murder; concurrent twenty-year sentence for robbery; ten-year sentence for theft by taking of a motor vehicle, to be served consecutively to the twenty-year sentence; twenty-year sentence for aggravated battery, to be served concurrently with the sentence for theft by taking; ten-year sentence for concealing the death of another, to be served consecutively to the sentence of life imprisonment; a three-year sentence, to be served concurrently, for theft of a financial transaction card; and concurrent three-year sentences for each conviction for financial transaction card fraud); *Walker v. State*, 288 Ga. 174, n. 1 (702 SE2d 415) (2010) (life without parole for malice murder, a ten-year consecutive sentence for theft by taking a firearm, a one-year concurrent sentence for theft by taking an automobile (commuted to time served), and a five-year sentence for possession of a firearm during the commission of a crime, consecutive to the theft by taking a firearm count); *Whitus v. State*, 287 Ga. 801 (700 SE2d 377) (2010) (life imprisonment for murder and to various terms of years for exploitation of a disabled adult, concealing the death of another, and two counts of identity fraud).

10

These comparisons only serve to underscore our initial conclusion that a sentence of 150 years for the crimes in this case shocks the conscience. Because our "comparative analysis 'validate[s] [our] initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." (Citation omitted.) *Graham v. Florida*, __ U. S. __ (II) (130 SC 2011, 176 LE2d 825) (2010) (finding it unconstitutional to sentence juvenile nonhomicide offender to life imprisonment without parole). Accordingly, we reverse Davis's sentence and remand for re-sentencing in accordance with this opinion.

2. Because the issue of recidivist punishment will arise in resentencing Davis, he urges that we consider his argument that the State failed to establish that his prior federal conviction was a crime, which if committed in Georgia, would be considered a felony, and thus the trial court erred in relying upon that conviction to impose recidivist sentencing under OCGA § 17-10-7.

The recidivist statute "imposes maximum sentences for any person convicted of a felony who was previously convicted under the laws of any other state [or of the United States] of a crime which if committed within this state would be a felony." (Punctuation and footnote omitted.) *Woodson v. State,* 242 Ga. App. 67, 70 (4) (530 SE2d 2) (2000). See OCGA § 17-10-7 (a). "In turn, if the person has three such prior

11

felony convictions, upon a fourth felony conviction the person must serve the sentence without the possibility of parole. See OCGA § 17-10-7 (c)." *Nelson v. State*, 277 Ga. App. 92, 99-100 (5) (625 SE2d 465) (2005). "The burden is on the state to produce *competent* evidence of a prior conviction for purposes of sentencing." (Citation omitted and emphasis supplied.) *Brinkley v. State*, 301 Ga. App. 827, 830 (2) (689 SE2d 116) (2009). Moreover, "[t]he State bears the burden of showing that the foreign convictions were for conduct which would be considered felonious under the laws of this state. . . ." (Punctuation and footnote omitted.) *Woodson v. State*, 242 Ga. App. at 70 (4). And the "[f]ailure to properly prove the prior convictions requires remand and resentencing." (Footnote omitted.) Id.

The federal indictment charging Davis with theft or receipt of stolen mail under 18 U.S.C. § 1708 alleges that he "did knowingly and unlawfully possess stolen mail and articles contained therein, to wit: mail stolen from the personal mailboxes of postal patrons residing in [two counties], with knowledge that said mail and the articles contained therein were stolen. . . ." The federal statute at issue makes theft or other interference with the mail or receipt of stolen mail a felony, without regard to intent or value. 18 U.S.C. § 1708. Georgia law contains no comparable provision

criminalizing theft or possession of stolen mail per se. Thus, the State bore the burden of establishing that Davis's conduct would be considered felonious in this State.

Davis argues that we can determine that his conduct would not be considered felonious by comparing the elements of the federal charge to the comparable Georgia offenses cited by the State. Although a comparison of statutory elements certainly factors into the analysis, the State is tasked with the burden of showing that the federal conviction was for *conduct* that would be considered felonious in Georgia, which necessarily requires an inquiry into the facts underlying the federal crime. At the May 5, 2009 sentencing hearing, the State, without objection, relied in large part on double hearsay testimony from Davis's federal probation officer base upon her reading of a sentencing report to establish the specifics of Davis's conduct. Following remand, new evidence may be introduced, and Davis will be resentenced, all of which is likely to occur after January 1, 2013, when Georgia's new evidence code goes into effect and the state's hearsay rules will change. Accordingly, it would be premature for us to address this issue in this appeal.

*Judgment reversed and case remanded. Barnes, P. J., and McFadden, J., concur.*